UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| REBECCA GATHMANN-LANDINI, individually and on behalf of other persons similarly situated,<br><br>          Plaintiffs,<br><br>- against -<br><br>LULULEMON USA INC.; and any other related entities,<br><br>          Defendant. | Index No.: 15-CV-6867(JMA)(AYS)<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Named Plaintiff REBECCA GATHMANN-LANDINI, on her own behalf and on behalf of those similarly situated (collectively "Plaintiffs") by her attorneys Virginia & Ambinder, LLP and Leeds Brown Law, P.C., allege upon knowledge to herself and upon information and belief as to all other matters as follows:

**PRELIMINARY STATEMENT**

1. This action is brought pursuant to Labor Law Article 19 § 663, Labor Law Article 6 §§ 190 et seq., and 12 NYCRR § 142-2.2, Fair Labor Standards Act (hereinafter referred to as "FLSA"), 29 U.S.C. §§ 207 and 216(b), to recover unpaid wages and overtime compensation owed to Plaintiff and all similarly situated persons who are presently or were formerly employed by LULULEMON USA INC. and any other related entities ( "Defendant" or "Lululemon") at any of its New York State retail locations.

2. Upon information and belief, beginning in April 2009 and continuing through the present, Lululemon has engaged in a policy and practice of knowingly requiring its employees to perform off the clock work without providing their agreed upon hourly wage rate as required by

applicable state law.

3. Upon information and belief, beginning in April 2009 and continuing through the present, Lululemon has engaged in a policy and practice of knowingly requiring their employees to perform off the clock work in weeks where the total number of hours worked exceeds 40, without providing proper overtime compensation as required by applicable state and federal law.

4. Plaintiff has initiated this action seeking for herself, and on behalf of all similarly situated employees, all compensation, including unpaid wages and overtime wages, which they were deprived of, plus interest, liquidated damages, attorneys' fees, and costs.

## JURISDICTION

5. Jurisdiction of this Court is invoked pursuant to FLSA, 29 U.S.C. §216(b), and 28 U.S.C. §1331 and 1337. This court also has supplemental jurisdiction under 28 U.S.C. § 1367 of the claims brought under the New York Labor Law.

## VENUE

6. Venue for this action in the Eastern District of New York under 28 U.S.C. § 1391 (b) is appropriate because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of New York.

## THE PARTIES

7. Plaintiff Rebecca Gathman-Landini is an individual who currently resides in the County of Nassau, State of New York.

8. Upon information and belief, Defendant LULULEMON USA INC. is a foreign business corporation organized and existing under the laws of the State of Delaware, and is authorized to do business in the State of New York. According to Defendants' website, Defendants presently operate 25 retail locations in New York State.

9. Lululemon's New York retail locations are under common control by Defendants.

10. Lululemon's business involves interstate commerce.

11. Lululemon has an annual dollar volume of sales or business done of at least $500,000.00.

## CLASS ALLEGATIONS

12. This action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

13. This action is brought on behalf of the Named Plaintiff and a class consisting of other persons who performed work for Lululemon as employees in nonexempt, retail positions and who are still able to pursue claims in a court of law.

14. The Named Plaintiff and putative class members are all victims of Lululemon's common policy and/or plan to violate the law by failing to provide proper wages, including overtime compensation, for all work performed.

15. Lululemon uniformly applied the same employment practices, policies, and procedures to all employees.

16. The putative class is so numerous that joinder of all members is impracticable. The size of the putative class is believed to be approximately 500 individuals. In addition, the names of all potential members of the putative class are not known.

17. The questions of law and fact common to the putative class predominate over any questions affecting only individual members. These questions of law and fact include, but are not limited to (1) whether Lululemon required the Named Plaintiff and members of the putative class to perform off the clock work without providing their agreed upon hourly wage rate, and (2) whether Lululemon failed to pay the Named Plaintiff and members of the putative class overtime

compensation at one and one-half times their respective regular rate of pay for all hours worked in excess of 40 in a given workweek.

18. The claims of the Named Plaintiff are typical of the claims of the putative class. The Named Plaintiff and putative class members were all subject to Lululemon's policies and practices of failing to pay employees all earned wages, including overtime compensation. The Named Plaintiff and putative class members thus have sustained similar injuries as a result of Lululemon's actions.

19. The Named Plaintiff and their counsel will fairly and adequately protect the interests of the putative class.

20. The Named Plaintiff has retained counsel experienced in complex wage and hour class action litigation.

21. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Named Plaintiff and putative class members lack the financial resources to adequately prosecute separate lawsuits against Lululemon. Furthermore, the damages for each individual are small compared to the expense and burden of individualized prosecutions of this litigation. Finally, a class action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to Lululemon's policies.

22. Prosecuting and defending multiple actions would be impracticable.

23. Managing a class action will not result in undue difficulties.

## FACTS

24. Lululemon employed Plaintiff Gathmann-Landini as a seasonal educator from November 1, 2012 to approximately January 2013 at Lululemon's Roosevelt Field location. Plaintiff was then promoted to an assistant manager working for Lululemon until her

employment ended in approximately November 2015.

25. During the entirety of her employment with Lululemon, Plaintiff was paid an hourly wage rate, which ranged from $12.00 to $22.39 per hour.

26. Plaintiff was a non-exempt hourly employee.

27. Plaintiff did not execute an arbitration agreement with Lululemon.

28. Plaintiff's weekly work schedule varied from day to day and from week to week during her employment.

29. Plaintiff's schedule was typically designed to include enough shifts and hours to roughly equate to a 40-hour work week "on the clock".

30. Plaintiff typically worked "on the clock" for Lululemon 6 days a week.

31. Plaintiff worked "on the clock" daily shifts that typically ranged from 5 to 9 hours each day.

32. Lululemon maintained a log of Plaintiff's working hours "on the clock." A listing of many of the hours Plaintiff worked each day and each week can be found on Exhibit A attached hereto.

33. The time records in Exhibit A show that during numerous weeks throughout Plaintiff's employment, she was paid for performing around 40 hours of work "on the clock." For example, for the week of April 7, 2014 to April 13, 2014, Plaintiff was paid for 39.9 hours of work. (Exhibit A p. 29.) The following week, from April 14, 2014 to April 20, 2014, Plaintiff was paid for 39.5 hours of work. (Exhibit A p. 29.) The week of June 16, 2014 to June 22, 2014, Plaintiff was paid for 40 hours of work. (Exhibit A p. 24.) The following week, from June 23, 2014 to June 29, 2014 Plaintiff was again paid for exactly 40 hours of work. (Exhibit A p. 24.) For the week of January 26, 2015 to February 1, 2015, Plaintiff was paid for 39.7 hours of work.

5

(Exhibit A p. 8.)

34. Upon information and belief, members of the putative class also had work weeks during their employment with Lululemon where they were paid "on the clock" for at least 40 hours of work.

35. Plaintiff and members of the putative class routinely worked additional compensable time each week "off the clock" and were not paid for this work.

36. Being "on the clock" beyond scheduled shift times, especially when it would involve payment of overtime hours, was strongly discouraged by Lululemon management.

37. Each Lululemon store was allotted a number of total hours all employees were to work on a weekly and quarterly basis. Compliance with these numbers were tracked by Lululemon and routinely discussed with store managers. There was immense pressure by management to comply with these numbers. Failure to comply resulted in negative consequences. For example, Lululemon denied bonuses to Plaintiff and other employees at the Roosevelt Field's location in the second quarter of 2015 for exceeding their quarterly employee work hours "on the clock" allotment by less than 1%.

38. Lululemon's management was aware that Plaintiff and members of the putative class were performing work "off the clock" on a routine basis.

39. Plaintiff was told on numerous occasions by management not to clock-in time she or other employees spent performing "community work."

40. Plaintiff was told on numerous occasions by management not to clock-in time she or other employees spent performing administrative work that could not be completed during scheduled shifts.

41. In one Tri-State Business report submitted to Lululemon management in 2013, it

was noted that due to a surplus of allotted employee pay hours for the quarter, it would be possible to pay workers some hours for community work programs and administrative tasks.

42. In approximately August 2015, Plaintiff and other assistant store managers from different New York Lululemon store locations had a breakfast meeting with the tristate regional manager Jennifer Sachs and Lululemon HR representative Michelle Falcone. Plaintiff and other assistant managers expressed concerns about the community and administrative work being performed "off the clock" and that they did not think that was fair. Plaintiff was subsequently disciplined by Jennifer Sachs and told not to discuss pay matters again with co-workers.

43. Clocking in hours that exceeded Plaintiff's scheduled hours, especially if the additional hours would be overtime hours, would have resulted in Plaintiff being disciplined or fired.

44. Upon information and belief, clocking in hours that exceeded the scheduled hours of putative class members, especially if the additional hours would be overtime hours, would have resulted in members of the putative class being disciplined or fired.

**Community Work**

45. Plaintiff and members of the putative class were told by management to perform "community work" to promote Lululemon's brand and increase Lululemon's sales. "Community work" involved organizing and promoting fitness classes and related events for people in the community, attending fitness classes and events in the community, and recruiting fitness instructors in the community to work as brand "ambassadors", among other tasks.

46. Failure to perform community work would have resulted in a worker being disciplined or ultimately fired.

47. At "community work" fitness classes, Plaintiff and members of the putative class

7

were required to inform instructors they were attending from Lululemon, wear Lululemon apparel, and speak to instructors and other attendees about Lululemon. Plaintiff and members of the putative class were often told by management to take specific classes, at specific times, with specific instructors based on Lululemon's business targets and marketing campaigns and strategies.

48. Plaintiff was put in charge of "community work" strategy for the Roosevelt Field Lululemon store. Among other responsibilities, this involved considerable work planning community events and tracking "community work" by Roosevelt Field employees.

49. Lululemon's management established guidelines for how much "community work" was to be performed each week based on a worker's position and whether the worker was part-time or full time. Per company policy, Lululemon covered out of pocket expenses for "community work" but did not typically compensate Plaintiff or other members of the putative class for their time spent performing community work.

50. Plaintiff, as a full-time assistant manager, typically performed 2 to 5 hours of "community work" each week for which she was not paid her hourly wage or overtime compensation.

51. Plaintiff performed this unpaid "community work" in numerous weeks when she was paid "on the clock" for 40 hours, and therefore in those weeks, this unpaid "community work" would require pay at her overtime wage rate.

52. For example, Plaintiff performed 2 ½ hours of unpaid "community work" at Revolution Yoga during the week of December 2, 2013 to December 8, 2013. During this same week, Plaintiff was paid "on the clock" for 40.3 hours of work. (Exhibit A p. 38.)

53. For example, Plaintiff performed approximately 3 hours of unpaid "community

8

work" at soul cycle during the week of February 2, 2015 to February 8, 2015. During this same week, Plaintiff was paid "on the clock" for 40 hours of work (Exhibit A p. 8.)

54. Upon information and belief, members of the putative class who were part-time employees performed 1 to 2 hours of unpaid "community work" each week, and full-time employees typically performed 2 to 5 hours of unpaid "community work" each week, with more hours being worked by higher level employees.

55. "Community work" performed by Plaintiff and members of the putative class, and information and leads obtained from "community work", was tracked by Lululemon management and was an important aspect of their work.

56. Each week a report was generated for each Lululemon store and submitted to Lululemon's management. Plaintiff assisted in drafting and gathering the information for these reports. Among other information, these reports typically identified specific employees by name, noting what kind of "community work" he or she was doing, how that helped Lululemon's business, and where "community work" efforts needed to be focused or improved.

57. Community work was compensable work for which Plaintiff and members of the putative class were required to be paid their hourly wage rate and overtime wage rate.

58. Plaintiff and members of the putative class were not paid hourly wages or overtime wages for all the "community work" they performed for Lululemon.

**Administrative Work**

59. Plaintiff and members of the putative class who worked in positions above entry-level "educators" were also required to perform administrative work each week as part of their job duties.

60. This administrative work consisted of a variety of tasks that were all part of

9

Plaintiff and other assistant and store manager's job responsibilities. For example, Plaintiff and other assistant and store managers were required to complete and submit various daily, weekly, and monthly reports which documented information such as weekly sales performance, community work performed, marketing campaigns, development efforts such as new hires and training, "wins" for the week, goals achieved or not achieved, areas for improvement, and so forth. Plaintiff and other assistant and store managers also had to respond to and make various telephone calls. For example, Plaintiff had to call-in for regular telephone conferences with Lululemon managers and other Tri-State region stores. Plaintiff and other assistant and general managers also had to regularly review and respond to emails from Lululemon corporate, other managers, and store employees about work related matters. Plaintiff and other assistant and general managers were also responsible for making and revising the weekly schedules, handling employee paperwork and human resources tasks, and addressing any other employee issues and needs.

61. Plaintiff and other assistant and store managers were required to work on the retail floor during their shifts. There was not enough time during Plaintiff's scheduled weekly shifts, or upon information and belief those of other assistant and store managers, to complete all the required administrative work.

62. Lululemon had strict policies that required Plaintiff and other members of the putative class to answer emails within certain time frames and complete reports and other store assignments by certain dates and times. For example, Plaintiff was required to submit a "business recap" report every Monday.

63. Failure to perform these administrative job duties would have resulted in Plaintiff being disciplined or fired.

64. Upon information and belief, failure of putative class members to perform these administrative job duties would have resulted in being disciplined or fired.

65. Plaintiff would frequently respond to emails on her cell phone, make telephone calls on her cell phone, and do other administrative work, all outside of her scheduled shift times, when she was not on the clock, and for which she did not receive payment of her hourly wage or overtime wage rate.

66. For example, on July 31, 2013, Plaintiff spent approximately two hours preparing for and participating in a Tri-State Community Call with other Lululemon managers for which she was not "on the clock" and therefore not paid. That same work week, from July 27, 2013 to August 4, 2013, Plaintiff worked "on the clock" for 43.7 hours. (Exhibit A p. 50) Her unpaid administrative work would therefore require payment at her overtime wage rate.

67. For example, in the last week of August 2015, Plaintiff spent approximately 5 hours of work "off the clock" performing an audit of paid employee hours and drafting emails to management to respond to management's findings that the number of paid employee hours exceeded the permitted store allotment. Upon information and believe, Plaintiff worked at least 40 hours this same work week, and thus these unpaid hours required payment at her overtime wage rate.

68. Plaintiff would also often work for two to three hours at her home on Monday evenings to finish the "business recap" report by the Monday deadline for which she was not paid her hourly wage or overtime wage. This report was frequently emailed by Plaintiff to Lululemon management well after the store closed on Monday evenings. As seen in Exhibit A, Plaintiff worked 40 hours "on the clock" in most weeks, and thus this unpaid work required payment at her overtime wage rate.

69. Plaintiff typically performed up to 5 hours of administrative work each week for which she was not paid her hourly wage or overtime compensation.

70. Upon information and belief members of the putative class who were employed in positions above entry level "educators" also typically performed up to 5 hours of administrative work each week for which they were not paid their hourly wage or overtime compensation.

71. Administrative work was compensable work for which Plaintiff and members of the putative class were required to be paid their hourly wage rate and overtime wage rate.

72. Plaintiff Gathmann-Landini's paycheck would routinely reflect that she had worked fewer hours than she actually had.

73. Upon information and belief the paychecks of putative class members would also reflect that they had worked fewer hours that they actually had.

74. Lululemon's New York retail locations were under common control by Defendants' upper management.

75. Plaintiff and members of the putative class were "employees" pursuant to Labor Law § 190, 12 NYCRR § 142-2.14 and 29 U.S.C. §203(e).

76. Defendants are "employers" pursuant to Labor Law § 190, Labor Law § 651, and 29 U.S.C. § 203(d).

**FIRST CAUSE OF ACTION AGAINST DEFENDANTS:**
**FAILURE TO PAY WAGES**

77. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs

78. Pursuant to Labor Law § 191 and the cases interpreting same, workers such as the Named Plaintiff and members of the putative class are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which the wages are earned."

79. By failing to pay the Named Plaintiff and members of the putative class proper wages for time worked, Defendants violated Labor Law § 191.

80. Pursuant to Labor Law § 193, "[n]o employer shall make any deduction from the wages of an employee," such as the Named Plaintiff and members of the putative class, that is not otherwise authorized by law or by the employee.

81. By withholding wages from the Named Plaintiff and members of the putative class, pursuant to Labor Law § 193 and the cases interpreting same, Defendants made unlawful deductions.

82. Labor Law § 663 provides that, "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees."

83. Upon information and belief, Defendants' failure to pay proper wages to the Named Plaintiff and members of the putative class was willful.

84. By the foregoing reasons, Defendants are liable to the Named Plaintiff and members of the putative class in an amount to be determined at trial, plus interest, liquidated damages, attorneys' fees and costs.

**SECOND CAUSE OF ACTION AGAINST DEFENDANTS:**
**NEW YORK OVERTIME COMPENSATION**

85. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

86. Title 12 NYCRR § 142-2.2 requires that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate…."

87. The Named Plaintiff and, upon information and belief, other members of the

putative class, routinely worked more than 40 hours per week while working for Defendants.

88.  The Named Plaintiff and, upon information and belief, other members of the putative class, did not receive overtime compensation for all hours worked in excess of 40 hours in any given week.

89.  According to the Labor Law, implementing regulations, and the cases interpreting same, the Named Plaintiff and other members of the putative class are not exempt from receiving overtime compensation.

90.  Consequently, by failing to pay the Named Plaintiff and other members of the putative class overtime compensation, Defendants violated Labor Law § 663 and 12 NYCRR § 142-2.2.

91.  Upon information and belief, Defendants' failure to pay overtime compensation to the Named Plaintiff and members of the putative class was willful.

92.  By the foregoing reasons, Defendants are liable to the Named Plaintiff and members of the putative class in an amount to be determined at trial, plus interest, liquidated damages, attorneys' fees and costs.

### THIRD CAUSE OF ACTION AGAINST DEFENDANTS: FLSA OVERTIME COMPENSATION

93.  Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

94.  Pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 207, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a

rate not less than one and one-half times the regular rate at which he is employed."

95. Defendants failed to pay Plaintiff and members of the putative class overtime wages, at the rate of one and one half times the regular rate of pay, for all hours worked after the first 40 in any given week.

96. The failure of Defendants to pay Plaintiff and members of the putative class their rightfully owed overtime compensation was willful.

97. By the foregoing reasons, Defendants are liable to Plaintiff and members of the putative class in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

**WHEREFORE**, the Named Plaintiff, individually and on behalf of all other persons similarly situated, seek the following relief:

(1) on the first cause of action against Defendants in an amount to be determined at trial, plus interest, liquidated damages, attorneys' fees and costs;

(2) on the second cause of action against Defendants in an amount to be determined at trial, plus interest, liquidated damages, attorneys' fees and costs;

(3) on the third cause of action against Defendants in an amount to be determined at trial, plus interest, liquidated damages, attorneys' fees and costs;

(4) together with such other and further relief the Court may deem appropriate.

Dated: New York, New York
April 24, 2017

                                       VIRGINIA & AMBINDER, LLP

                                       By: ____/s/_____
                                               Lloyd Ambinder, Esq.
                                               Kara Miller, Esq.
                                               40 Broad Street, 7th Floor
                                               New York, NY 10004
                                               lambinder@vandallp.com
                                               kmiller@vandallp.com

                                                         and

                                       LEEDS BROWN LAW, P.C.

                                               Jeffrey Brown, Esq.
                                               Brett R. Cohen, Esq.
                                               One Old Country Road, Suite 347
                                               Carle Place, New York 11514
                                               Tel:    (516) 873-9550

                                    *Attorneys for Plaintiffs and the Putative Class*