UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

REBECCA GATHMANN-LANDINI,
individually and on behalf of other persons
similarly situated,

                                  Plaintiffs,

        -against-

LULULEMON USA INC., and any other
related entities,

                              Defendants.

Case No.: 2:15-cv-06867 (JMA)(AYS)

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION
FOR CONDITIONAL CERTIFICATION PURSUANT TO
29 U.S.C. § 216(b) OF THE FAIR LABOR STANDARDS ACT**

**DLA PIPER LLP (US)**

Katharine J. Liao (admitted *pro hac vice*)
Garrett D. Kennedy
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4500
Fax: (212) 335-4501
katharine.liao@dlapiper.com
garrett.kennedy@dlapiper.com

*Attorneys for Defendant lululemon usa inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ................................................................................................4

    I.      lululemon, Generally...........................................................................4

    II.     lululemon's Policies  Regarding Timekeeping
         and Overtime ......................................................................................6

    III.    Community and Administrative Work.................................................7

         A.     Administrative Work .............................................................7

         B.     Community Work ..................................................................9

             i.     What Is "Community Work"?.....................................9

             ii.    Subsidized Classes...................................................10

             iii.   Voluntary Attendance at Community
                   Events and Subsidized Classes.................................11

    IV.    Plaintiff's Employment with lululemon and Subsequent Termination...............12

    V.     Declarant Julia Hammer .....................................................................12

ARGUMENT ...................................................................................................................13

    I.      Legal Standard ...................................................................................13

    II.     Conditional Certification Should Be Denied.....................................14

         A.     Administrative Work ...........................................................14

             i.     There Is No Common Unlawful Policy Regarding
                   "Administrative Work"...............................................14

             ii.    Plaintiff and Members of the FLSA
                   Collective Are Not "Similarly Situated".........................16

         B.     Community Work ................................................................17

             i.     There Is No Common Unlawful Policy
                   Concerning "Community Work".................................17

             ii.    Plaintiff Is Not Similarly Situated to Other FLSA Collective
                   Members..................................................................19

         C.     The Claims at Issue Necessarily Involve Individualized Inquiries..........21

    III.    Plaintiff Has Offered No Evidence Beyond the Roosevelt Field Store ..............22

    IV.    Conditional Certification Would Be Inefficient and a Waste of Resources.........24

CONCLUSION.................................................................................................................26

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                  **Page(s)**

*Ahmed v. T.J. Maxx Corp.*,
   2013 WL 2649544 (E.D.N.Y. June 8, 2013) ...................................................................14

*Ali v. N.Y.C. Health & Hosps. Corp.*,
   2013 WL 1245543 (S.D.N.Y. Mar. 27, 2013) ...............................................................20

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
   2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) ...............................................................20

*Bayles v. Am. Med. Response*,
   950 F.Supp. 1053 (D. Colo. 1996) ................................................................................22

*Brickey v. Dolgencorp., Inc.*,
   272 F.R.D. 344, 347 (W.D.N.Y. 2011) ........................................................................15

*Caballero v. Kelly Services, Inc.*,
   2015 WL 12732863 (S.D. Tex. Oct. 5, 2015) ..............................................................22

*Castro v. Spice Place, Inc.*,
   2009 WL 229952 (S.D.N.Y. Jan. 30, 2009) .................................................................13

*Chao v. Gotham Registry, Inc.*,
   514 F.3d 280 (2d Cir. 2008) .........................................................................................15

*Eng-Hatcher v. Sprint Nextel Corp.*,
   2009 WL 7311383 (S.D.N.Y. 2009) .......................................................................15, 24

*Griffith v. Wells Fargo Bank, N.A.*,
   2012 WL 3985093 (S.D. Tex. Sept. 12, 2012) ............................................................22

*Guaman v. 5 M Corp.*,
   2013 WL 5745905 (S.D.N.Y. Oct. 23, 2013) ........................................................16, 23

*Harper v. Lovett's Buffet, Inc.*,
   185 F.R.D. 358 (M.D. Ala. 1999) ................................................................................16

*Hoffmann-La Roche, Inc. v. Sperling*,
   493 U.S. 165 (1989) ...................................................................................................3, 24

*Huertero-Morales v. Raguboy Corp.*,
   2017 WL 4046337 (S.D.N.Y. Sept. 12, 2017) .............................................................23

*Ji v. Jling Inc.*,
   2016 WL 2939154 (E.D.N.Y. May 19, 2016) ..............................................................13

*Kuebel v. Black & Decker Inc.*,
    643 F.3d 352 (2d Cir. 2011) ............................................21

*Laroque v. Domino's Pizza, LLC*,
    557 F. Supp. 2d 346 (E.D.N.Y. 2008) .........................................13, 23

*Martin v. Sprint/united Mgmt. Co.*,
    2016 WL 30334 (S.D.N.Y. Jan. 4, 2016) .........................................23

*Mata v. Foodbridge LLC*,
    2015 WL 3457293 (S.D.N.Y. June 1, 2015) .......................................13

*McGlone v. Contract Callers, Inc.*,
    867 F. Supp. 2d 438 (S.D.N.Y. 2012) ...........................................24

*Mendoza v. Casa de Cambio Delgado, Inc.*,
    2008 WL 938584 (S.D.N.Y. Apr. 7, 2008) ........................................13

*Monger v. Cactus Salon & SPA's LLC*,
    2009 WL 1916386 (E.D.N.Y. July 6, 2009) .......................................24

*Morales v. Plantworks, Inc.*,
    2006 WL 278154 (S.D.N.Y. Feb. 2, 2006) ........................................13

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ...................................................24

*Reyes v. Nidaja, LLC*,
    2015 WL 4622587 (S.D.N.Y. Aug. 3, 2015) .......................................20

*Richardson v. Wells Fargo Bank, N.A.*,
    2012 WL 334038 (S.D. Tex. Feb. 2, 2012) .......................................16

*Romero v. H.B. Auto. Grp.*,
    2012 WL 1514810 (S.D.N.Y. May 1, 2012) ........................................18

*Sanchez v. JMP Ventures, LLC*,
    2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) .......................................20

*Thind v. Healthfirst Mgmt. Servs., LLC*,
    2016 WL 7187627 (S.D.N.Y. Dec. 9, 2016) ....................................15, 22

*Trinidad v. Pret A Manger (USA) Ltd.*,
    962 F. Supp. 2d 545 (S.D.N.Y. 2013) .........................................23, 24

*Udo v. Lincare, Inc.*,
    2014 WL 5354589 (M.D. Fla. Sept. 17, 2014) ....................................21

*Zheng v. Good Fortune Supermarket, Inc.*,
    2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013) ...................................................................23

*Zivali v. AT & T Mobility, LLC*,
    784 F. Supp. 2d 456 (S.D.N.Y. 2011) ................................................................................15

**Statutes**

29 U.S.C. § 216(b) ..................................................................................................................1, 13

29 C.F.R. § 785.28 .....................................................................................................................17

lululemon usa inc. ("lululemon" or "Defendant") submits this memorandum in opposition to plaintiff Rebecca Gathmann-Landini's ("Plaintiff") motion for conditional certification ("Motion" or "Mot.") pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA").[1]

## PRELIMINARY STATEMENT

Plaintiff, a former lululemon Assistant Store Manager ("ASM"), alleges she was not paid for all hours worked, and seeks to bring claims on behalf of other employees under the FLSA (the "FLSA Collective") and the New York Labor Law (the "NYLL Class").  As her sole FLSA claim is for unpaid overtime, Plaintiff asks the Court to certify a collective of any employee in New York State who *once* worked 38 hours "on the clock" in "*any*" given week.[2]

Plaintiff's motion fails to demonstrate that conditional certification is warranted and should be denied in its entirety.  However, even if the Court is inclined to grant conditional certification, Plaintiff's Motion, at best, demonstrates that conditional certification could *only* be appropriate as to employees at the Roosevelt Field store where Plaintiff worked – although, respectfully, Defendant submits certification should not granted even there.

Plaintiff's Motion premised on two types of purported unpaid overtime: (i) time spent on "administrative work"; and (ii) time spent on "community work."  First, Plaintiff claims she and members of the FLSA Collective were paid for some, but not all, time performing what she unilaterally defines as "administrative work," *i.e.*, any work "not performed on the retail floor." Such duties range from taking store inventory to overseeing budget, and vary by location, Store Manager ("SM"), and the number of team members, amongst other factors.  Despite this, she

---

[1] True and correct copies of Exhibits ("Ex.") referenced herein are attached to the Declaration of Garrett D. Kennedy, Esq., dated December 21, 2017, which is submitted herewith.

[2] Plaintiff indicates two dates from which she claims the FLSA Collective period runs –  July 27 or August 27, 2013.  (*See* Mot., pp.1, 3.)  Upon a review of the record, the "July 27" date appears to be in error.

seeks certification based on this purported off-the-clock "administrative work" performed by ASMs and Key Leaders ("KLs").

Plaintiff's claim that she was not paid for some "administrative work" is based on her own experiences and runs contrary to lululemon's clear, lawful policy requiring employees to record and be paid for all hours worked.  Indeed, Plaintiff tacitly concedes as much, as she argues that an incentive bonus program constitutes a *de facto* policy requiring off-the-clock work, but this argument is baseless and has been roundly rejected by numerous courts.

Beyond this, Plaintiff fails to show she is similarly situated to the FLSA Collective with respect to "administrative work."  In the first instance, she presents absolutely no evidence that ***any other employee at any other store once performed*** "administrative work" off the clock, while Defendant submits extensive declarations to the contrary.  She further fails to demonstrate, *inter alia*, that she is required to perform the same type of "administrative work" as the rest of the FLSA Collective, that she does so with the same frequency, or anything else to suggest that employees throughout New York State are otherwise similarly situated to her.

Second, Plaintiff claims she was required to perform off-the-clock "community work" without pay, but this self-serving assertion is not grounds for statewide certification.  Plaintiff defines "community work" as required off-the-clock attendance at fitness classes or events hosted by third-parties to promote lululemon, but this definition deliberately misrepresents how the term "community work" is used by lululemon – which refers to ***paid***, on-the-clock work.

Unsurprisingly, Plaintiff puts forward no policy reflecting that "community work" is unpaid (there is none).  Instead, she turns to a policy stating that ***voluntarily*** attending – but not working at – fitness classes or "community" events that are open to the public (*i.e.*, an in-store yoga class) is not compensable.  Stated otherwise, Plaintiff argues that a policy which expressly

governs voluntary attendance at non-work events, in fact requires employees to attend and work at such events without pay.  This makes no sense, and conditional certification cannot be granted on Plaintiff's tortured interpretation of this policy.

Likewise unsupported is Plaintiff's claim she is "similarly situated" to the FLSA Collective when it comes to "community work."  As demonstrated by the extensive declarations, employees from all across New York aver they were paid for all "community work," while Plaintiff offers zero evidence of any employee at another store even *once* doing "community work" without pay.  Further, the amount and type of "community work" varies wildly from employee to employee and store to store, defeating any similar situation.  There is no way to extrapolate Plaintiff's purported experience across twenty-plus stores.

Finally, individualized issues predominate that cannot be overcome.  This is not the case of employees being universally refused meal breaks or a similar blanket violation; rather, an individualized inquiry will be needed for each opt-in plaintiff to determine both liability and damages.  For instance, for each opt-in, it will be necessary to determine, *inter alia*, *each* fitness class or event attended, if she was paid for that time, and if lululemon was aware that she performed "off-the-clock" work.  This cannot be managed on a collective basis.

In short, even if believed, Plaintiff's experiences were atypical and contrary to lululemon's lawful policies; she is, at most, an outlier.  Given this, Defendant submits the Court should wield its discretionary power over FLSA notice as "a tool for efficient case management" and decline to hear the Motion now.  *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 174 (1989).  This will promote efficiency by allowing the parties to complete class- and collective-discovery in the short timeframe provided under the case management plan – closing by the end of April – without the need for extension, or prejudice to the FLSA Collective, as all such claims

are also covered by the NYLL Class.[3]  Moreover, Plaintiff's proposed collective (modified from her Complaint) includes all employees who **once** worked more than 38 hours in a week; identifying them will be a time-consuming and expensive process.[4]  If the Court does hear the Motion at this time, Defendant submits it should be denied in its entirety.

## STATEMENT OF FACTS

**I.**     **lululemon, Generally**

lululemon is a retailer of athletic and yoga apparel and related products.  From 2009 through the present, lululemon has operated roughly 25 stores in New York State, including in New York City, Long Island, Syracuse, Buffalo and other locations.[5]  (Ex. 30, ¶3.)  Broadly, lululemon's stores are staffed by four categories of workers:  Educators, KLs, ASMs and Store Managers ("SMs").  (*See* §III, *infra*.)  SMs and, in their absence, ASMs, report to a Regional Manager ("RM"), who oversees stores based on geographic areas; for instance, there are currently five RMs responsible for stores in New York State, although some also oversee stores in other states.  (Ex. 30, ¶¶4-5.)

Defendant's stores operate with significant independence:  each is run by SM and ASMs who are store-dedicated and, *inter alia*, has its own staff, hours of operations, and employee

---

[3] To not prejudice Plaintiff or the FLSA Collective, Defendant would agree to toll the FLSA statutory period.

[4] Plaintiff's definition for the FLSA Collective is entirely arbitrary.  Why "38 hours" as opposed to any number?  What if the Court finds that the FLSA Collective is similarly situated with respect to one type of work but not the other?  This collective is even inconsistent with Plaintiff's own allegations – claiming she worked 4 to 10 off-the-clock overtime hours per week – and would require individualized inquiries into hours worked just to identify collective members (*see* §IV, n.18, *infra*).  It simply makes no sense and should be rejected on this basis alone.

[5] Declarations from employees at 11 New York stores are submitted herewith.  Although Defendant cites certain portions of these declarations, such selections are intended to be illustrative of content of all submitted declarations; for instance, each declarant avers to, *inter alia*, being paid for all "administrative" or "community" hours, but rather than cite to 29 different paragraphs to this effect, Defendant has provided exemplars.

schedules, designed to suit that store's specific business needs.  (Ex. 30, ¶¶7-8; *see, e.g.,* Ex. 1, ¶7; Ex. 2, ¶6; Ex. 4, ¶8.)  Each store also has a unique budget that is tailored based on sales performance and other factors.  (Ex. 30, ¶8.)  As a result, employee work schedules vary significantly between stores, based on numerous factors, including without limitation budget, headcount, season and location.  (*See, e.g.,* Ex., 3 ¶11; Ex. 4, ¶8.)

Employee duties vary within each job category – and within stores – most significantly for ASMs and KLs.  Generally, ASMs oversee daily operations, including employee supervision, budgetary matters, scheduling, and managerial functions.  (*See* Mot., Ex. A; Ex. 27, ¶¶7, 12-13.) They also oversee payroll:  ASMs are required to ensure employees are paid for all time worked, including entering time corrections (*i.e.,* if any employee forgot to clock out, *see* Statement of Facts ["Facts"], §II, *infra*) and reviewing payroll to ensure employees are paid correctly.  (Mot., Ex. B; Mot., Ex. A; *see also* Ex. 1, ¶¶4-6; Ex. 2, ¶4; Ex. 27, ¶¶21, 41-42.)  Further, at many stores, ASMs set employee work schedules.  (Ex. 1, ¶¶4-6; Ex. 2, ¶4.)

There are, however, substantial differences between ASMs.  For instance, some stores divide ASM duties between business "pillars;" at Defendant's Lincoln Square Store, one ASM oversees "community work," another operations and finance, and a third "people development" (*i.e.,* human resources).  (*See* Ex. 2, ¶¶4-5; Ex. 3, ¶4; Ex. 4, ¶¶4-5; *see also* Ex. 14, ¶7; Ex. 29, ¶5.)  Conversely, at other stores, ASMs may broadly oversee each "pillar" without differentiation.  (Ex. 5, ¶5.)  As a result, different ASMs have different work schedules, roles and responsibilities, and spend significantly varied time performing each duty.  (*See* Ex. 3, ¶9; Ex. 4, ¶¶11-12; Ex., 14 ¶¶4,7.)

KLs perform customer service duties, as well as certain supervisory functions, like ensuring Educators take breaks, releasing surplus Educators, and directing Educator duties.  (*See,*

*e.g.,* Ex. 6, ¶4; Ex. 7, ¶4; Ex. 8, ¶4.)  However, KLs' duties are not uniform:  for instance, some KLs are largely dedicated to "expo" work (*i.e.*, backroom functions) with nominal "community" duties (Ex. 9, ¶¶4, 24), while some stores have "community" teams, with certain KLs assigned to that team, thus spending significant working hours on "community" activities.  (Ex.10, ¶4.)  And others have completely different roles:  for instance, one KL splits time between her regular store and managing an event space operated by lululemon.  (Ex. 11, ¶¶5-6; *see also* Ex. 21, ¶4.)

These disparate duties appear in Plaintiff's own evidence.  (Mot., Ex. G.)  The "80.20 checklist" from her store reflects employees of the same positions with different day-to-day duties (all of which are paid duties):  Plaintiff ("Bec") was assigned "Community" oversight, while the other ASM ("Sarah") was not.  (*Id.*)  Similarly, KLs ("Graig," "Lexi," "Michelle G.") had unique duties.  (*Id.*)  There is also a handwritten section, "other," which adds duties not otherwise on the list, *i.e.*, that were uniquely written in, based on that store's needs.  (*Id.*)

## II.   lululemon's Policies  Regarding Timekeeping and Overtime

lululemon's policies on worktime and compensation are maintained in its handbook, "*pramana*," which is distributed to all employees at the start of their employment and always accessible via an online portal, "youlu."[6]  (*See, e.g.,* Ex. 2, ¶16; Ex. 11, ¶15; Ex. 14, ¶¶14-15.) *pramana* states "[a]ll non-exempt employees of lululemon . . . have a responsibility and a requirement to record all hours worked," and "are required to record all hours worked on a daily basis."  (Mot., Ex. B, pp.14-15.)  Its policy, titled "All Time Must Be Recorded/Report Concerns and Violations," further states:

> Lululemon prohibits all non-exempt employees . . . from working any work without recording their time for payroll purposes (someTimes [sic] referred to as "working off the clock").  No one at lululemon is authorized to work off the clock

---

[6] In their onboarding, employees are paid to review *pramana* and trained to raise compensation or time issues to their SMs, ASMs, People Potential (human resources) or the company's anonymous "integrity" hotline.  (*See* Ex. 2, ¶16; Ex. 11, ¶15; Ex. 14, ¶¶14-15; Mot., Ex. B, p.16.)

and no one at the Company has the authority to require any employee of lululemon to work off the clock.

(Mot., Ex. B, p.16.)  Defendant also has a policy mandating that work off store premises must be recorded – as it simply states, "Don't work off the clock."  (*Id.*, p. 48.)

Defendant uses an electronic timekeeping system through which employees clock in and out.  (Mot., Ex. B, p.15.)  If employees cannot use this system or have an issue with their time – *i.e.*, they work remotely or forget to clock out – *pramana* explains employees should use a "Recording Hours Worked" form that is maintained in each store.  (*Id.*; *see, e.g.,* Ex. 9, ¶16; Ex. 10, ¶13; Ex. 11, ¶18.)  The store's SM or ASM is responsible for entering any such time corrections "prior to payroll processing."  (Mot., Ex. B, p.15.)  Employees are trained on this policy at hiring.  (*See, e.g.,* Exs. 9-11.)

*pramana* provides employees will be paid overtime if they work more than 40 in a week. Specifically, employees "are entitled to overtime pay for all hours worked in excess of 40 hours per week . . . . Weekly and daily overtime . . . is paid at 1 1/2 times the employee's hourly rate of pay . . . ."  (Mot., Ex. B, p.16.)  They must first "obtain approval from [their] Store Manager, Assistant Manager or Key Leader on duty" prior to working overtime, but if such is worked without authorization, the employee "will be properly compensated for this time . . . ."  (*Id.*)

## III.   Community and Administrative Work

Plaintiff claims she was required to perform "administrative" and "community" work off the clock, and that lululemon has a uniform policy requiring employees to do so.  This is not so.

### A.   *Administrative Work*

Plaintiff contends all ASMs and KLs are similarly situated because they all perform "administrative work," which she defines as all "work involv[ing] tasks for which one did not

need to physically be working on the retail floor . . . ."  (Mot., p.9.)  This broad definition encompasses a wide array of responsibilities including, *inter alia*:

- "Expo" work, such as inventorying and other backroom work, to which functions certain employees are substantially dedicated (Ex. 9, ¶4; *see also* Ex. 12, ¶4);

- Preparing weekly business recaps or reports (Ex. 4, ¶¶33-34);

- Planning and strategizing "product testing" (Ex. 11, ¶31);

- Employee development (*i.e.*, "success meetings") and recruiting (Ex. 3, ¶33);

- Reviewing e-mails, including the company's weekly newsletter (*id.*; Ex. 24, ¶15);

- Strategizing regarding expanding the store's reach to male customers (Ex. 3, ¶33);

- Operating an event space (Ex. 11, ¶¶5-6); and

- Duties relating to "community" work (*see* Facts, §III.B, *infra*).

These tasks vary from person to person based on numerous factors, including their store, their assigned duties (*i.e.*, if an ASM is tasked with finance oversight versus community) and their independent discretion.  (*See* Facts, §I, *supra*.)  The time spent performing "administrative" duties varies by person, by store, and by day:  one KL avers that "expo" duties are his primary job duty (Ex. 9, ¶4); an ASM avers to having a dedicated "administrative" day each week (Ex. 14, ¶8; *see also* Ex. 24, ¶5; Ex. 29, ¶11); and others aver to performing only a few hours – if any – of weekly "administrative work" (Ex. 16, ¶28).  All declarants state they were paid for all such time, whether performed during their shift or otherwise, consistent with lululemon's policies.

Plaintiff does not cite a specific policy prohibiting the recording of any "administrative" time, but contends there was a *de facto* policy based on (i) a store's budget and (ii) its quarterly incentive bonus program (the "Bonus Program").  (Mot., p.19.)  This was not the case.

Each store receives a quarterly budget setting forth expense-related targets, including labor hours, which are determined based on the store's sales numbers, as well as other germane

factors.  (Ex. 30, ¶8.)  Stores can exceed the allotted hours and, in such instances, employees are paid for all time worked.  (*Id.*, ¶9.)  Under the Bonus Program, SMs and ASMs can receive a quarterly bonus if their store stays under budget with respect to allotted labor hours, but it does not change the fact that employees are paid for time worked.  (*Id.*)

B. **_Community Work_**

Plaintiff contends employees are not paid for "community work" – which she defines as attending "fitness classes and events in the community," and "recruiting fitness instructors," *i.e.*, ambassadors.  (Mot., pp.5-6.)  Plaintiff's definition of "community work" is misleading because it is inconsistent with the term's usage at lululemon; while employees perform "community work," it is on-the-clock and compensable – and not mandatory, off-the-clock work, as alleged.

i. *What Is "Community Work"?*

Each store aims to build relationships with its "community," *i.e.*, the local fitness community.  While stores have broad discretion on how to do so, subject to store-specific budgets, this often involves organizing "events," hosting in-store classes, "trunk shows" (off-site product demonstrations) or engaging with "ambassadors."  (*See, e.g.,* Ex. 16, ¶ 20; Ex. 25, ¶17.)  The type, nature and frequency of events vary greatly from store to store.  (*Id.*; *see* Ex. 15, ¶¶22-23 [outlet rarely has events]; Ex. 22, ¶26 [rural stores have different events]; Ex. 8, ¶19 [frequency varies by season]; Ex. 5, ¶¶29-30 [no set number of events].)  Employees are paid for required attendance and time worked at "community events."  (Ex. 12, ¶¶17, 19; Ex. 13, ¶23.)

Some stores work with "ambassadors," *i.e.*, people in fitness-related fields with whom the store has and/or is attempting to develop a relationship, although some stores, like outlets, may not.  (*See, e.g.,* Ex. 15, ¶¶ 22-23; Ex. 17, ¶18; Ex. 27, ¶27.)  Each "ambassador" is unique to a store, and the stores determine how to manage these relationships.  (*Id.*)  Employees are paid for time working with and soliciting ambassadors, such as if they meet with an ambassador or attend

their class to recruit them.  (*Id.*)  For instance, one declarant averred she ***and Plaintiff*** together solicited a group of potential ambassadors and was paid for all such time.  (Ex. 13, ¶24.)

Stores also may, on occasion, organize employees to attend local fitness classes to target a specific studio or ambassador.  (*See, e.g.,* Ex. 16, ¶ 19.)  This may involve a group of employees or a lone employee.  (*See, e.g.,* Ex. 15, ¶26; Ex. 20, ¶26; Ex. 5, ¶¶33, 35.)  Employees are paid for any time spent attending such a class.  (*Id.*)

Who determines what "community" activities a store will engage in differs store by store; in some instances, SMs oversee this process, while in others this may be delegated to ASMs, KLs and/or Educators.  (*See, e.g.,* Ex. 16, ¶21 [community team]; Ex. 2, ¶27 ["community" events determined by ASMs and SMs]; Ex. 14, ¶21 [ASM "delegates" community activities to other employees].)  There is no uniform quota for how much "community work" a store must perform, if any; rather, stores determine this locally, based on their store-specific budget.  (Ex. 10, ¶23; Ex. 20, ¶22.)  There also is no quota for how much "community work" employees must perform; this varies from employee to employee.  (*See, e.g.,* Ex. 17, ¶17; Ex. 6, ¶23; Ex. 12, ¶21; Ex. 26, ¶¶2-3.)  Some employees go weeks without doing "community work," some have never done any, and others do so daily.  (*Id.*)  Similarly, many employees have never worked with or solicited "ambassadors."  (*See, e.g.,* Ex. 19, ¶17; Ex. 20, ¶¶20-21; Ex. 6, ¶22.)

### ii.    *Subsidized Classes.*

As a benefit to employees, lululemon subsidizes the cost of fitness classes. (Mot., Ex. B, p.22.)  This is reflected in its "Yoga/Fitness Class Policy," which states:  "Taking classes is a ***voluntary*** activity and must be scheduled during ***non-working hours***."[7]  (*Id.* [emphasis added].)  In attending these classes, employees are not required to perform any services for lululemon, to

---

[7] lululemon historically paid a $25.00 per-class subsidy for employees, but recently (after Plaintiff's termination) launched a program known as "Sweaty Pursuits," whereby employees receive a monthly amount put towards classes.  (Ex. 4, ¶29.)  This remains voluntary.  (*Id.*)

promote its products, to discuss lululemon, or to even wear lululemon products.  (*Id.* [placing no conditions on this benefit]; *see also* Ex. 11, ¶28; Ex. 20, ¶24.)

Employees use this benefit with varying frequency:  some use it regularly, others rarely, and some not at all.  (Ex. 20, ¶24 ["I can choose to use this benefit as much or as little as I want."]; Ex. 24, ¶28 ["I . . . have not gone recently just because I have been feeling lazy."])  Although lululemon "aligned" itself with certain fitness studios, employees also can choose "a class at a new studio or . . . test out a new drop-in fitness experience . . . ."  (Mot., Ex. B, p.22.)  Employees are not required to report to lululemon which classes they attended, the type of class, or any other information regarding same, and this information is not tracked.  (Ex. 20, ¶24; Ex. 5, ¶33.)  Employee advancement is *not* conditioned on using this benefit; for instance, some managerial employees rarely, if ever, use this benefit.  (*See, e.g.,* Ex. 1, ¶29; Ex. 28, ¶26.)

### iii.     Voluntary Attendance at Community Events and Subsidized Classes.

To argue there is a statewide policy for not paying employees for "community work," Plaintiff points to a policy that reads:  "[a]ttendance at classes, courses and community events that are not mandatory is **NOT** considered hours worked and will not be paid time."  (Ex. B, p.17 [emphasis in original].)  Plaintiff intentionally misrepresents this policy.

The policy simply provides that employees are paid for time worked, but not paid for time not worked.  For example, off-shift employees will not be paid for (i) voluntarily attending fitness classes, regardless of if they use their fitness discount (*see* Facts, § III.D, *supra*), or (ii) voluntarily attending – but not working at – a "community event" hosted by a store.  Regarding the latter, stores may host events – like an in-store yoga class – that are open to the public; off-duty employees can attend and participate like any member of the public (however, an employee working the event – *i.e.*, hosting, setting up, etc. – would be paid).  (Ex. 25, ¶ 25; Ex. 10, ¶21.)  The majority of attendees are not employees and are members of the community.

11

(*Id.*)  Employees are not required to attend community events off-duty, attendance is not tracked, many have never attended, and attendance does not impact employee advancement.  (Ex. 16, ¶23; Ex. 18, ¶20).  In fact, many managerial employees have never, or have rarely, attended any such "community events."  (Exs. 1-2, ¶28.)

## IV.   Plaintiff's Employment with lululemon and Subsequent Termination

Plaintiff worked as an Educator in 2012, and subsequently as an ASM, all at its Roosevelt Field Store.  The Roosevelt Field Store is located in lululemon's "Tri-State" region, comprised of one outlet and nine stores – five in New York and the balance in Connecticut.  (Ex. 30, ¶6.)  As an ASM, Plaintiff managed Educators and KLs.  (*See* Facts, § I, *supra*.)  She set work schedules and made sure employees were paid for all time worked, including correcting time records in the event of errors (*i.e.*, forgetting to clock out) or if employees worked offsite.  (Ex. 13, ¶15; Ex. 16, ¶¶ 8-9; Ex. 27, ¶¶21, 41-42.)  Plaintiff was well aware of Defendant's timekeeping policies and "expressly instructed" subordinates to "to log this time [time working outside of the store] and to be paid for it."  (Ex. 13, ¶¶16-17.)

Plaintiff's employment was terminated in November 2015, after it was discovered she had stolen hundreds of dollars of gift cards from Defendant.  (Ex. 30, ¶12.)  When confronted, Plaintiff admitted not only to doing this, but also to engaging in the practice of "damaging" items, *i.e.*, purchasing them with her employee discount and returning same for full price.  (*Id.*)  Accordingly, her employment was terminated.  (*Id.*, ¶13.)

## V.   Declarant Julia Hammer

Julia Hammer was a KL at Roosevelt Field.[8]  (Mot., Ex. E.)  Ms. Hammer's declaration is of little value:  she reported directly to Plaintiff and worked at the same store, and she makes no

---

[8] While Ms. Hammer indicates she worked as a "seasonal educator" at Defendant's Lincoln Center store, her declaration fails to specify any alleged "off-the-clock" work performed there.

claims that anyone – much less anyone outside of the Roosevelt Field Store – ever told her to work "off-the-clock."  (*Id.*)  Stated otherwise, her declaration is derivative of Plaintiff's and offers no evidence other than regarding the Roosevelt Field Store.

## ARGUMENT

## I.   Legal Standard

The FLSA permits employees to maintain an action "for and in behalf of . . . themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Conditional certification may be granted if a plaintiff shows she is "similarly situated" to the other members of the proposed collective, shown only if she sets forth evidence "that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law."  *Castro v. Spice Place, Inc.*, 2009 WL 229952, at *2 (S.D.N.Y. Jan. 30, 2009) (citations omitted).  To determine if collective members are similarly situated, courts "look to the (1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class."  *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008) (citations omitted).  The evidence must show "a factual nexus" between the plaintiff and potential opt-ins. *Ji v. Jling Inc.*, 2016 WL 2939154, at *3 (E.D.N.Y. May 19, 2016).

District courts have discretion to deny conditional certification.  *See Morales v. Plantworks, Inc.*, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006).  A plaintiff's evidentiary burden "cannot be satisfied simply by unsupported assertions," *Mendoza v. Casa de Cambio Delgado, Inc.*, 2008 WL 938584, at *1 (S.D.N.Y. Apr. 7, 2008), but rather must be based on "actual evidence."  *Mata v. Foodbridge LLC*, 2015 WL 3457293, at *2 (S.D.N.Y. June 1, 2015).

## II.   **Conditional Certification Should Be Denied**

Plaintiff seeks to conditionally certify a collective of "Educators, Key Leaders, Assistant Managers at any of [Defendant's] New York State retail locations from August 27, 2013 . . . who were paid 'on the clock' for more than 38 hours in at least one work week . . . ."  (Mot., p.1.) This is broken into two subclasses:  "community work," relating to all such employees, and "administrative work," applicable to only KLs and ASMs.  Plaintiffs' Motion should be denied.

### A.   *Administrative Work*

#### i.   *There Is No Common Unlawful Policy Regarding "Administrative Work"*

There is no common *unlawful* policy applicable to all New York ASMs and KLs requiring them to perform "administrative work" off-the-clock.  Defendant's policies on worktime and overtime are entirely lawful:  they mandate that employees record *all* time worked, including time worked away from stores; make no exception for "administrative work," and expressly state time beyond 40 hours in a week will be paid at an overtime rate.  (*See* Facts, §III.A, *supra*.)

Given this, Plaintiff argues that Defendant maintains *de facto* policies, namely through (i) its Bonus Program and (ii) requiring employees to obtain management approval before working overtime.  (Mot., pp.10-13.)  Plaintiffs' positions are meritless.  ***First***, the Bonus Program is lawful.  It allows ASMs and KLs (and SMs) to receive quarterly bonuses above their regular wages, subject to their management of labor costs.  (Mot., Ex. J.)  These labor hour targets are set based on store sales, as well as other store-specific criteria, and there is no penalty or discipline for failing to meet these hour targets (other than not receiving a bonus).  (*Id.*)

Precedent unanimously holds that a bonus program incentivizing management of labor hours is lawful and does not support collective certification.  On identical facts, the court in *Ahmed v. T.J. Maxx Corp.*, 2013 WL 2649544, at *14 (E.D.N.Y. June 8, 2013), refused to conditionally certify an FLSA collective where bonuses were paid based on control of labor

hours and hour caps were based on store sales.  Similarly, in *Brickey v. Dolgencorp., Inc.*, 272 F.RD. 344, 347 (W.D.N.Y. 2011), the court denied conditional certification where the employer had a labor budget policy that limited payroll hours, expressly rejecting the argument that the policy "motivate[ed] managers to falsely reduce reported hours . . . and/or to assign employees tasks to be performed 'off the clock' . . . ."  As explained,

> [t]he Court declines to hold that facially-lawful policies, which encourage store management to make productive use of employees' time or to report for work when scheduled, can form the equivalent of a "common policy or plan that violate[s] the law," merely because they indirectly might encourage the minimization of overtime.

(*Id.*)  *See also Eng-Hatcher v. Sprint Nextel Corp.*, 2009 WL 7311383 (S.D.N.Y. 2009) (denying certification where plaintiff alleged that reward program designed to minimize overtime "incentivized" managers to act illegally).  In short, the Bonus Program is lawful,  Plaintiff offers nothing to the contrary, and her argument has been roundly rejected by other Courts.

**Second**, Plaintiff argues Defendant's policy requiring employees to receive managerial approval before working overtime evidences a *de facto* policy requiring employees to work overtime "off-the-clock."  (Mot., p.13.)  It does no such thing:  while this policy provides employees must receive approval before working overtime, it also expressly indicates that if they do work such time without approval, they still will be paid.  (Mot., Ex. B, p.16.)

"Requiring pre-approval for overtime, and disciplining employees for working overtime that has not been authorized, is not unlawful."  *Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 462 n.3 (S.D.N.Y. 2011) (*citing Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 291 (2d Cir. 2008)); *see also Thind v. Healthfirst Mgmt. Servs., LLC*, 2016 WL 7187627, at *5 (S.D.N.Y. Dec. 9, 2016) (same).  Courts routinely reject conditional certification premised on similar policies and the result here should be no different.  *See, e.g., Eng-Hatcher*, 2009 WL 7311383, at *3 (denying conditional certification based on policy requiring employees to receive approval prior to

working overtime); *see also Richardson v. Wells Fargo Bank, N.A.*, 2012 WL 334038, at *6 (S.D. Tex. Feb. 2, 2012); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 363 (M.D. Ala. 1999).

### ii.    Plaintiff and Members of the FLSA Collective Are Not "Similarly Situated"

Plaintiff has not shown she and the FLSA Collective are similarly situated with respect to "administrative work."  *First*, Plaintiff's definition of "administrative work" – which she defines as all work off the retail floor – is so broad that it is incapable of being certified.  (Mot., p.9.)  As explained above, this definition encompasses a wide array of work – from backroom inventorying, to creating business plans, to human resources work, to "community" endeavors, among other things – such that there is no "similarity" to any of it.  (*See* Facts, §III.A, *supra*.)

*Second*, she has not demonstrated, nor can she, that FLSA Collective members worked "2 to 5 hours" of off-the-clock "administrative work" per week (ECF No. 37, ¶¶68-70) – and, in fact, presents zero evidence of any FLSA Collective member even once doing so (other than her subordinate, Ms. Hammer).  The conclusory assertion in her declaration that other employees did so *statewide* is deficient as a matter of law.  *See, e.g., Guaman v. 5 M Corp.*, 2013 WL 5745905, at *3 (S.D.N.Y. Oct. 23, 2013) (rejecting certification as to multiple stores where plaintiff relied on a self-serving affidavit, but no supporting common policy).  Conversely, extensive declarations from New York employees disprove her claim.  (*See* Facts, §III.A, *supra*.)

*Third*, ASMs and KLs are not similarly situated because their duties vary significantly. ASMs and KLs each perform distinct roles and duties, including with respect to "administrative work," and, as a result, spent varying amounts of time doing so – with many working more or less "administrative" time than Plaintiff claims she did.  (*See* Facts, §III.A, *supra*.)

*Finally*, each store's SMs and/or ASMs is responsible for ensuring that employee time is accurately recorded and paid – including work outside of regular shifts.  (*See* Facts, §I; *see e.g.*, Ex. 27, ¶7.)  Since there is no common unlawful policy, any decision not to pay employees for

"administrative work" must be made at the store level.  At best, Plaintiff proffers evidence only that she, as an ASM, failed to follow the lululemon's express policies requiring her to log all time worked, but this says nothing about what happened at other stores, and cannot be the basis for statewide conditional certification.

B.      ***Community Work***

i.      ***There Is No Common Unlawful Policy Concerning "Community Work"***

Plaintiff has not identified any common ***unlawful*** policy applicable to ***all*** New York State employees regarding compensation for "community work"  because no such policy exists. Instead, Plaintiff points to a policy that reads:  "Attendance at classes, courses and community events that are not mandatory is **NOT** considered hours worked and will <u>not</u> be paid time."  (Mot., Ex. B, p.17 [emphasis in original].)   She contends this policy shows that lululemon required employees to do "community work" off the clock.  She is wrong:  this policy says nothing of the sort and her tortured reading of this very clear policy cannot support certification.

To be clear, this policy does not require employees to perform any "community work" or other services to Defendant.  It simply indicates that Defendant will not pay employees to engage in voluntary, non-work-related activities – which, of course, an employer has no obligation to do: under the regulations governing the FLSA, time spent at "lectures, meeting, training programs and similar activities" is not compensable if (i) it is "outside of the employee's regular working hours"; (ii) it is voluntary; (iii) it is "not directly related to the employee's job"; and (iv) no "productive work" is performed. 29 C.F.R. § 785.28.

lululemon's policy is consistent with this:  employees are not paid for ***voluntarily*** attending fitness classes or "community" events if they are attendees and off-shift.  (Mot., Ex. B, p.17.)  Plaintiff does not contend this policy is facially unlawful, but rather alleges that she was instructed to attend fitness classes or community events, and Defendant subsequently "did not

categorize" such time "as 'mandatory'" under this policy and "therefore did not pay [her] . . . ." (Mot., p.6.)  This argument is a straw man:  even if true (which it is not), this would not make the ***policy*** unlawful – but rather its implementation, which would require a store-by-store and person-by-person analysis, and thus is not appropriate for broad, statewide conditional certification – particularly as Plaintiff proffers no evidence with respect to any other New York store.

Of course, Plaintiff also presents no ***evidence*** that Defendant required her to attend any such "classes or events," other than vaguely claiming she was told to take "certain types of classes, at specific times, with specific instructors." (Mot., Ex. D, ¶9.)  Such a conclusory assertion, which does not even identify one class she was instructed to take, or who told her to do so, or any other details, cannot support conditional certification – ***much less across 25 stores***.[9] *See Romero v. H.B. Auto. Grp.*, 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012) (rejecting "conclusory allegations").  Likewise, her assertion that a failure to attend these classes or events would be met with discipline is unsupported and conclusory:  she fails to allege a ***single*** instance of this happening (it did not), much less a ***statewide policy***, and evidence submitted by Defendant demonstrates that many employees rarely, if ever, attend community events or classes in their off-hours, and have not been disciplined for doing so.  (*See e.g.*, Ex. 23, ¶22; Ex. 20, ¶¶20-21.)

Plaintiff's other evidence of an unlawful statewide policy is equally deficient.  She purports Defendant's policy to subsidize fitness classes evidences that employees were required to perform off-the-clock work.  (Mot., p.7.)  The policy, of course, says nothing of the sort:  it merely states Defendant will subsidize a certain number of weekly classes, ***and places absolutely no conditions on employees use***.  (Mot., Ex. B, p.22.)  It does not require that they wear

---

[9] Ms. Hammer's declaration is not probative of any policy, particularly as she worked at the same store as, and under, Plaintiff.  Indeed, Ms. Hammer avoids saying who "instructed" her to perform alleged off-the-clock work, presumably, because, if true, it was by her ASM, Plaintiff.

lululemon products, speak to instructors about lululemon, or do anything else.  (*Id.*)  Plaintiff offers nothing to the contrary, other than, again, conclusory statements in her declaration which are of no legal import.  (*See* Mot., Ex. D, ¶9.)

Recognizing there is no formal policy, Plaintiff attempts to manufacture a *de facto* practice, but again fails.  For instance, she cites to a "Business Recap" that she prepared, claiming that because this went to a RM and references "community" activities by Roosevelt Field employees, it reflects a statewide unlawful policy.  (*See* Mot., Ex. F.)  This is incorrect: this document does not speak to whether employees were ***paid*** for the "community work" referenced.  (*Id.*)  And even assuming such was unpaid (they were not), Plaintiff proffers nothing to show that the RM knew this, because she did not, as she understood the employees were paid for any "community work" referenced.  (Ex. 30, ¶14.)

Plaintiff also cites two e-mails, but these are equally unavailing:  one references Plaintiff's store "being a strong presence in community classes," without reference to pay; notably, the sender – the same RM – avers she understood that any such time was paid.  (Mot., Ex. H; Ex. 30, ¶15.)  The other e-mail appears to reference a discussion between managerial staff about classes they attended, but again, this does not indicate whether such classes were paid or unpaid, voluntary or required, or had any connection to lululemon whatsoever (other than being part of an after-the-fact discussion).  (*See* Mot., Ex. I.)

### ii.   *Plaintiff Is Not Similarly Situated to Other FLSA Collective Members*

Plaintiff is not similarly situated to FLSA Collective members with respect to her "community work" allegations.  As such, the Motion should be denied.

***First***, while Plaintiff contends she was required to perform community work "off-the-clock," employees at stores across New York unequivocally did not share this experience, and were paid for all such time.  (*See, e.g.*, Ex. 18, ¶¶18, 22; Ex. 19, ¶¶16, 20; Ex. 6, ¶¶21, 23.)  Her

sole "evidence" employees – other than at Roosevelt Field – did so is hearsay "communications" with unidentified employees (Mot., Ex. D, ¶13), which are deficient as a matter of law.  *See Reyes v. Nidaja, LLC*, 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015) (denying certification where plaintiff offered only "observations" that co-workers also were not paid).[10]

*Second,* while Plaintiff contends she was required to promote lululemon at fitness classes during off-duty hours without pay (Mot., pp.5-7), substantial employee declarants aver that they would attend classes in their free time without any expectation or requirement that they promote lululemon – but were paid if asked by their store to do so.  (*See e.g.*, Ex. 6, ¶ 26; Ex. 22, ¶28.)

*Third,* Plaintiff purports she was instructed to take certain classes and attend certain events off-shift.  (Mot., pp.5-7.)  Employee declarants all aver that they were not told what classes or events, if any, to attend while they were off-duty, nor were they were not required or pressured to attend any such classes or events.  (*See e.g.*, Ex. 12, ¶22-24; Ex. 13, ¶¶32-33.)

*Fourth*, employees are not similarly situated to Plaintiff in that they all used Defendant's fitness subsidy to varying degrees – and not "2 to 5 hours per week," as Plaintiff claims.  (*See, e.g.*, Ex. 12, ¶22; Ex. 13, ¶33; Ex. 14, ¶28.; Ex. 20, ¶24.)

*Finally,* although Plaintiff contends all FLSA Collective members performed "2 to 5 hours of unpaid Community Work" each week (Mot., p.9), there is no evidence that they did so at all – much less that for "2 to 5 hours" per week.  To the contrary, employees all have varying degrees of "community" responsibility and thus spend substantially different amounts of time performing such work per week – all of which is paid.  (*See* Ex. 18, ¶20 ["I do not participate in

---

[10] *See also Sanchez v. JMP Ventures, LLC*, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (denying conditional certification as to other worksites where plaintiff relied on "observations" and "conversations"); *Ali v. N.Y.C. Health and Hosps. Corp.,* 2013 WL 1245543, at *3 (S.D.N.Y. Mar. 27, 2013) (denying conditional certification where based on "conversations"); *Barfield v. N.Y.C. Health and Hosps. Corp.*, 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005) (denying motion reliant upon "anecdotal hearsay").

community events very often"]; Ex. 24, ¶27 [weeks and months with no community events].)

Indeed, Plaintiff cannot even claim to be similarly situated with the other ASM at her Roosevelt

Field Store with respect to "community work," as Plaintiff was principally responsible for

"community" work, while the other ASM ("Sarah") was not." (Mot., Ex. G.)

    Simply put, Plaintiff cannot even show that her own duties are similar to those of her co-

workers in Roosevelt Field, much less broadly across all lululemon stores in New York.

    C.    ***The Claims at Issue Necessarily Involve Individualized Inquiries***

    Conditional certification should be denied because the claims here necessarily involve

individualized, fact-specific inquiries for each collective member on both liability and damages.

Specifically, such will require, *inter alia*:

- A week-by-week determination for each FLSA Collective member of off-the-clock "administrative work" and "community work" performed;

- With respect to ***each*** "fitness class" or "event" attended by ***each*** FLSA Collective member, inquiry into if this was (i) off-hours; (ii) voluntary; (iii) job-related; and (iv) "productive work" for lululemon and, if so, how much time out of the "fitness class" or "event" constituted "working time";

- Whether lululemon knew or reasonably should have known FLSA Collective Members performing alleged "off-the-clock" work, *see Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) ("To establish liability . . . a plaintiff must prove . . . the employer had actual or constructive knowledge of that work."); and

- Whether each such employee was in fact paid for the time at issue.

    In short, this cannot be conducted on a collective basis.  Rather, as significant

declarations already demonstrate, there is wide variation between the facts and circumstances of

lululemon's New York employees on material issues, such as the amount and type of

"community work" performed, if any; the amount and type of "administrative work" performed,

if any; employee work schedules, *see, e.g., Udo v. Lincare, Inc.*, 2014 WL 5354589, at *1 (M.D.

Fla. Sept. 17, 2014) (denying conditional certification on overtime claim based, in part, on differences in employees work schedules); employee duties; and a host of other factors.

These individualized issues are exacerbated here because individual defenses apply to Plaintiff.  Plaintiff was an ASM who oversaw timekeeping at her store and was tasked with ensuring her employees were paid correctly; if she did not do this – or deliberately worked off the clock so as to, for instance, depress labor hours to get her bonus – she was not following company policy, would be complicit in the purported violations (if any) and would be subject to unique defenses not applicable to other FLSA Collective members.  (*See* Facts, §IV, *supra*.) Similarly, Plaintiff's employment was terminated because she was caught red-handed stealing from lululemon, exposing her to both potential counterclaims and equitable defenses.  (*Id.*)

Courts routinely reject conditional certification on the existence of individualized analyses alone – or, in one case, prohibited amendment of a complaint since such would be futile.  *See Thind*, 2016 WL 7187627, at *5 (denying motion to amend to add off-the-clock collective action claims because claims "would require roughly seventy mini-trials, which defeats the purpose of collective proof"); *Griffith v. Wells Fargo Bank, N.A.*, 2012 WL 3985093, at *5 (S.D. Tex. Sept. 12, 2012) (denying certification as, inter alia, claim that employees felt "pressured" to not record overtime hours was inherently individual inquiry).[11]

## III.    Plaintiff Has Offered No Evidence Beyond the Roosevelt Field Store

Even if the Court finds that Plaintiff proffered evidence to support collective certification at the Roosevelt Field Store (which she has not), there is no evidence of any improper pay practices at any of Defendant's other twenty-plus New York stores.  A plaintiff cannot conditionally certify a collective covering multiple worksites without such evidence.  *See, e.g.,*

_____

[11] *See also Caballero v. Kelly Services, Inc.*, 2015 WL 12732863, at *7 (S.D. Tex. Oct. 5, 2015) (denying certification as claims required "an individual inquiry for each Plaintiff"); *Bayles v. Am. Med. Response*, 950 F.Supp. 1053, 1061-63 (D. Colo. 1996) (same).

*Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 558 (S.D.N.Y. 2013) (limiting notice to subset of stores since plaintiffs did not demonstrate "across all locations a uniform policy of failure to pay overtime"); *Guaman*, 2013 WL 5745905, at *3 (rejecting multi-site certification since plaintiff relied on self-serving affidavit without evidence of a common policy); *Laroque*, 557 F.Supp.2d at 355-56 (same).

Here, Plaintiff submits only (i) her declaration, alleging only non-probative hearsay "observations" and "conversations," and (ii) the declaration of Ms. Hammer, who worked at the same store as, and reported to, Plaintiff.  "Evidence" such as this is uniformly rejected as insufficient to certify collectives beyond a plaintiff's own worksite.  *See, e.g., Huertero-Morales v. Raguboy Corp.*, 2017 WL 4046337, at *3 (S.D.N.Y. Sept. 12, 2017) ("unsupported" assertions that other employees were not paid for time worked were insufficient).[12]

Her "documentary" evidence is also unavailing.  She relies on a "Business Recap" and an e-mail from her RM to claim her RM knew of purported "off-the-clock" work, but, as explained above, neither says anything about (i) employees working off the clock, or (ii) what happened at other stores, and the RM herself believed both documents to reflect on-the-clock work.  (Mot., Exs. F, H; Ex. 30, ¶¶14, 15.)  She also submits an e-mail purportedly reflecting an after-the-fact discussion between SMs and/or ASMs about local fitness studios, but this says nothing about whether such time was paid or unpaid, or required by Defendant.  (Mot., Ex. I.)  Stated otherwise, this "evidence" does not support the existence of a statewide policy of non-payment.

Finally, Plaintiff contends she attended an August 2015 meeting with her RM and ASMs from other stores at which "off the clock" work was discussed.  (Mot., Ex. D, ¶23.)  While

---

[12] *See also Zheng v. Good Fortune Supermarket, Inc.*, 2013 WL 5132023, at *2 (E.D.N.Y. Sept. 12, 2013) (single affidavit insufficient if based on "observations"); *Martin v. Sprint/united Mgmt. Co.*, 2016 WL 30334, at *9 (S.D.N.Y. Jan. 4, 2016).

Defendant vehemently disputes her "account" and notes certain obvious inaccuracies (Ex. 30, ¶¶17-19), this hardly reflects a **statewide** policy of required off-the-clock "community" or "administrative" work.  First, Plaintiff identifies no other ASMs who purportedly "expressed concerns" (there were none), or the stores at which they worked.  *See, e.g., Eng-Hatcher*, 2009 WL 7311383, at *5 (identifying names insufficient).  Second, she identifies no "policy" or "practice," much a **statewide** one, requiring off-the-clock work "community" or "administrative" work, that was discussed.  Third, even if this reflected a "policy," only five New York stores and one outlet store reported to that RM; there is no basis to extrapolate this across the entire State.

Given this deficient evidence, the FLSA Collective may not be certified on a statewide basis.  *See, e.g., McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 444-45 (S.D.N.Y. 2012) (certifying a modified class of employees of only plaintiff's division); *Monger v. Cactus Salon & SPA's LLC*, 2009 WL 1916386, at *2 (E.D.N.Y. July 6, 2009) (denying conditional certification at 25 locations as plaintiff relied on conclusory declaration as to such locations).

## IV.   Conditional Certification Would Be Inefficient and a Waste of Resources

A "court's discretionary power to facilitate the sending of notice to potential class members is premised on its use as a tool for efficient case management." *Trinidad*, 962 F. Supp. 2d at 556 (*citing Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 174 (1989); *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010)).  While, as explained above, the Motion should be denied on its merits, Defendant submits, in the alternative, that the Court should exercise its discretion to promote efficiency by delaying consideration of FLSA certification until after class- and collective-discovery, set for late April 2018.  ***To avoid prejudice to Plaintiff or the FLSA Collective, Defendant agrees to toll the applicable statute of limitations claims for such time.***

Deciding Plaintiff's Motion in her favor (however unlikely) would result in significant inefficiencies, while there is no prejudice in delaying consideration for just a few months –

particularly if the limitations period is tolled.  The FLSA Collective is a subset of the broader NYLL Class, which includes identical claims and the same class members.  Thus, even if certification is granted, it does not preserve any claims or remedies, but risks delaying discovery through the issuance of notice, as any notice period likely will extend beyond the current end of class- and collective-discovery (or, at a minimum, close to such time).  Further, the parties will seek discovery on opt-ins – Plaintiff already propounded requests to this end – forcing an extension of discovery and delaying any motion for final FLSA and/or NYLL certification.

Beyond this, simply identifying the FLSA Collective members will be expensive and time-consuming.  Plaintiff's Motion presents a new definition of the FLSA Collective, including any New York employee who *once* worked 38 hours "on the clock" in "*any*" given week – instead of readily identifiable categories of employees, like "full-time" or "part-time."[13]  (Mot., p.1.)  There are more than 650 potential class members, but Defendant (i) has no readily available means to sort by weekly work hours (its pay records are biweekly, *see* ECF No. 37-1) and thus manual review of tens or hundreds of thousands of pages of payroll records may be required, and (ii) will have to work with two third-party payroll vendors to obtain this data.

This will be an expensive and burdensome process, also may be of little or no value: should the NYLL Class be certified, each FLSA Collective member will receive notice anyway, since they all are part of that class.  Conversely, if the NYLL Class and/or final certification is denied, Defendant will have unnecessarily incurred this significant expense.

In short, the Court has the discretion to regulate conditional certification for "efficiency" purposes, which discretion Defendant respectfully submits should be utilized here.

---

[13] While this could be narrowed by focusing on "full-time" employees (approximately 140 persons), this new definition of the FLSA Collective will require far more extensive document review, as some part-time employees may have once or twice picked up extra shifts, thus meeting this new hours threshold.  (*See* Ex. 18, ¶8 [part-time employee *once* worked 38 hours].)

## <u>CONCLUSION</u>

Based on the foregoing, and as set forth above, Defendant respectfully requests that the

Court deny Plaintiff's Motion in its entirety.

Dated: New York, New York
       December 21, 2017

                                           Respectfully submitted,

                                           DLA PIPER LLP (US)

                                           By:  /s/ Garrett D. Kennedy

                                           Katharine J. Liao, Esq. (admitted *pro hac vice*)
                                           Garrett D. Kennedy, Esq.
                                           1251 Avenue of the Americas
                                           New York, New York 10020-1104
                                           Tel.:   (212) 335-4500

                                           *Attorneys for Defendant*
                                           *lululemon usa inc.*