UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
REBECCA GATHMANN-LANDINI,
individually and on behalf of other persons
similarly situated,

               Plaintiffs,          **MEMORANDUM &
                                          ORDER**

        -against-                    CV 15-6867 (JMA)(AYS)

LULULEMON USA INC.; and any other
related entities,

               Defendants.
--------------------------------------------------------------X

**SHIELDS, Magistrate Judge:**

      Plaintiff, Rebecca Gathmann-Landini ("Plaintiff" or "Gathmann-Landini") commenced

this action, on behalf of herself and others similarly situated, pursuant to the Federal Fair Labor

Standards Act of 1938 ("FLSA"), New York Labor Law ("NYLL") Article 19 § 663, NYLL

Article 6 §§ 190 et seq., and 12 NYCRR § 142-2.2. Plaintiff seeks unpaid wages, overtime

compensation and other damages. Named as defendants are corporate defendant Lululemon USA

Inc. and "any other related entities" ("Lululemon" or "Defendants").

      Presently before the court is Plaintiff's motion to have this matter proceed conditionally

as a collective pursuant to 29 U.S.C. §216(b).[1] In the event that this Court approves of the

conditional collective, Plaintiff seeks approval of a form of notice advising members of the

collective of their right to opt-in to this action, and authorizing the sending and/or posting of

notice of the collective. Defendant opposes the motion in its entirety.

---

1. Plaintiff also asserts claims for unpaid wages and overtime pursuant to New York law that are
not before the Court in the instant motion.

For the reasons set forth below, Plaintiff's motion to proceed as a conditional collective is granted. The collectives shall consist of: 1) those employed by Defendant Lululemon USA Inc. as Educators, Key Leaders, and Assistant Managers at any of its New York State retail locations from August 27, 2013 to today, who were not paid straight or overtime compensation for "community work" in at least one work week during this time, and 2) those employed by Defendant Lululemon USA Inc. as Key Leaders and Assistant Managers at any of its New York State retail locations from August 27, 2013 to today who were not paid straight or overtime compensation for "administrative work" in at least one work week during this time. With regard to the form of notice, this Court's "Notice Form" is attached, and is the presumptively correct form to be used in cases before this Court where a collective is certified. Counsel are directed to confer regarding the language of this notice. Any proposed or agreed upon changes to this Court's form are to be submitted for review, along with an explanation as why the change is necessary. This Court will then rule on the appropriate form of notice.

BACKGROUND

I.      Facts Considered in the Context of this Motion

The facts summarized below are drawn from the submissions of the parties as described below. Plaintiff relies on the allegations set forth in her Amended Complaint, ("Am. Compl.") see Docket Entry ("DE") 37, as well as documents and declarations. In particular Plaintiff's counsel has submitted a variety of Lululemon corporate documents and emails. As to factual declarations, Plaintiff submits her own declaration ("Plaintiff Dec.") (DE 55-4), a reply declaration ("Plaintiff Reply Dec.") (DE 56-2), and the declaration of Julia Hammer, a former

Lululemon employee ("Hammer Decl.") (DE 55-5) ("Hammer Decl.").[2] In response, Lululemon

submits factual declarations by numerous if its employees. DE 58. These declarations uniformly

refute all of Plaintiff's factual allegations.

II.      The Parties and the Factual Allegations of the Complaint

Lululemon is a foreign business corporation organized and existing under the laws of the

State of Delaware, and is authorized to do business in the State of New York. Am. Compl. ¶ 8.

It presently operates 25 retail locations in New York State, which are under common control by

Lululemon. Am. Compl. ¶¶ 8-9.

Plaintiff was employed as a seasonal educator from November 1, 2012 to approximately

January 2013 at Lululemon's Roosevelt Field location, before being promoted to an Assistant

Manager. She worked for Lululemon until her employment ended in approximately November

of 2015. Am. Compl. ¶ 24. Plaintiff states that during the entirety of her employment with

Lululemon, she was paid an hourly wage rate, which ranged from $12.00 to $22.29 per hour.

Am. Compl. ¶ 25. Plaintiff states that her "weekly work schedule varied from day to day and

from week to week during her employment," and "her schedule was typically designed to

_____

[2]      Although Declarant Julia Hammer executed an arbitration agreement which covers her
FLSA claims, her testimony is still admissible to corroborate the testimony of Plaintiff. This
is because "the question on a motion to proceed as a collective action is whether the proposed
plaintiffs are similarly situated 'with respect to their allegations that the law has been
violated.'" Romero v. La Revise Associates, L.L.C., 968 F. Supp. 2d 639, 646 (S.D.N.Y.
September 16, 2013). Courts in this circuit have consistently moved forward with the first
step of FLSA Collective actions to determine if plaintiffs are similarly situated, without
regard to arbitration agreements made by the plaintiffs. See D'Antuono v. C & G of Groton,
Inc., 2001 WL 5878045 (D. Conn. Nov. 23, 2011) (citing cases).

include enough shifts and hours to roughly equate to a 40-hour work week 'on the clock.'" Am. Compl. ¶¶ 28-29.

Plaintiff claims that members of the putative class also had work weeks during their employment with Lululemon where they were paid on the clock for at least 40 hours of work. She states that she and members of the putative class commonly worked additional compensable time each week off-the-clock, but were not paid for this work. Am. Compl. ¶¶ 34-35. Plaintiff's claims of unpaid work include claims of unpaid (and required) "community work", as well as claims of performing administrative tasks off the clock so as not to exceed the company's allowable 40 hour work week.

Plaintiff describes required "community work" to include activities such as "organizing and promoting fitness classes and related events for people in the community, attending fitness classes and events in the community, and recruiting fitness instructors in the community to work as brand 'ambassadors,' among other tasks." Am. Compl. ¶¶ 45-46. Plaintiff alleges that she and members of the suggested collective were told by management to perform such work, and that failure to do so would result in discipline or termination. Plaintiff alleges that she and members of the putative collective performed community work without pay in weeks when they were paid on the clock for 40 hours. Had community work been included in hours worked, Lululemon would have been required to pay overtime wages. Am. Compl. ¶ 51.

Plaintiff's allegations of unpaid overtime work also include allegations regarding work performed by above entry-level Lululemon "Educators" who were required to perform administrative work each week as part of their job duties. Am. Compl. ¶ 59. Administrative work "consisted of a variety of tasks that were all part of Plaintiff and other assistant and store managers' job responsibilities," which required them to "submit various daily, weekly, and

4

monthly reports," "to respond to and make telephone calls" and e-mails, and to make and revise

weekly schedules. Am. Compl. ¶ 60. Plaintiff alleges that she and members of the collective

were required to work on the retail floor during their scheduled shifts; that there was not enough

time during Plaintiff's scheduled weekly shifts, or of other assistant and store managers, to

complete all the required administrative work; and thus, Plaintiff and members of the putative

class performed administrative work off-the-clock, for which they did not receive compensation

of their hourly or overtime wage rate. Am. Compl. ¶¶61, 64-65.

III.    Claims Alleged in the Amended Complaint and the Proposed Collective

Plaintiff's first cause of action in the Complaint alleges violations of New York Labor

Law §191 due to Defendants' failure to pay wages for time worked; and of New York Labor

Law §193 due to Defendants allegedly making unlawful deductions from the wages of the

Plaintiff and members of the putative class. See Am. Compl. ¶¶ 78-81. Plaintiff's first cause of

action further seeks recovery of any such underpayments, together with costs and reasonable

attorney's fees pursuant to New York Labor Law §663. Am. Compl. ¶ 82. The second cause of

action in the Amended Complaint alleges overtime wage violations pursuant to Title 12 NYCRR

§142-2.2. Am. Compl. ¶¶86-90. Plaintiff's third cause of action alleges parallel overtime wage

violations pursuant to the FLSA. Am. Compl. ¶¶ 94-96. Plaintiff seeks compensatory damages

for herself and those who opt in to the collective, as well as liquidated damages, attorneys' fees

and the costs of this action.

Plaintiff seeks to pursue this matter as an FLSA collective action that includes all

individuals employed by Lululemon as Educators, Key Leaders, and Assistant Managers at any

of its New York State retail locations from August 27, 2013 to date, and who were paid "on the

clock" for 38 or more hours in at least one work week during this time. See e.g., Memorandum

of Law in Support of Plaintiff's Motion for Conditional Certification Pursuant to 29 U.S.C. §216(b) of the Fair Labor Standards Act ("Pl. Mem"). DE [54] at 1. Members of the proposed collective are alleged to be subject to the same unlawful policy as Plaintiff in that they, like Plaintiff, were required to perform work off-the-clock to skirt the FLSA's overtime provisions. Id. Defendants' conduct with respect to the improper payment of wages is alleged to be willful. Am. Compl. ¶ 96. In furtherance of her request to proceed as a collective action, Plaintiff requests court-authorized notice be published to the putative collective to notify them of the pendency of this action, and of their rights under the FLSA. DE [54] at 2.

IV.     Plaintiff's Motion and Supporting Documentation

As noted, Plaintiff seeks conditional certification of this matter as an FLSA collective, and to have notice of the pendency of this action (and the right to opt in), sent to all potential members of the proposed collective. The individuals to whom notice is proposed to be sent are described as those "employed by Defendant Lululemon USA Inc. as Educators, Key Leaders, and Assistant Managers at any of its New York State retail locations from August 27, 2013 to today and who were paid 'on the clock' for 38 or more hours in at least one work week during this time." See DE 54 at 1. In support of the motion, Plaintiff submits, as noted, her declarations, as well as the Hammer Declaration and supporting affidavits.

Plaintiff's declaration states that she worked a number of hours each week which were off-the-clock and thus, she was not paid for all the hours worked, and that "[m]ost of these 'off-the-clock' hours would have been overtime hours. Gathmann-Landini Decl. ¶ 5. Plaintiff claims that she and members of the putative class were subjected to the company-wide community work policy as descried above and that "failure to perform community work would have resulted in a worker getting in trouble or ultimately being fired," and that "based on communications with

6

other Lululemon employees and Lululemon management . . . employees were routinely not paid their hourly wage or overtime rates for hours spent performing community work at Lululemon's other New York retail locations." Gathmann-Landini Decl. ¶¶ 7, 11, 13.

In support of her claims of unpaid administrative work, Plaintiff's declaration states that Lululemon's target hours and bonus program meant that she, and other Key Leaders and Assistant Mangers worked a number of hours each week performing administrative work off-the-clock, for which they were not paid their hourly and overtime wages. Gathmann-Landini Decl. ¶ 17. This is because "[e]mployee schedules were created . . . based on . . . meeting [the] allotted hours target that Lululemon corporate would give each store"[3],"[t]he allotted hours were never enough to complete all the work that employees had to do," and thus, Plaintiff and other Key Leaders and Assistant Managers "could not complete all the administrative tasks . . . during [their] scheduled hours." Gathmann-Landini Decl. ¶¶ 15-16. Plaintiff alleges that she and other Key Leaders and Assistant Managers would usually "perform up to 5 hours of administrative work each week" without being paid hourly wages or overtime compensation because Plaintiff and other Key Leaders and Assistant managers "were under immense pressure not to clock in extra hours to make sure the hours target was not exceeded." Gathmann-Landini Decl. ¶¶ 17, 21.

The Hammer Declaration corroborates Plaintiffs's. Thus, Hammer states that she was employed by Defendant as a Key Leader from July 11, 2013 until approximately September 14,

_____

3. Lululemon retail stores were allotted a number of total hours all employees were to work on a weekly and quarterly basis. Am. Compl. ¶ 37. Plaintiff alleges that "[t]here was immense pressure by management to comply with these numbers," id., because "[t]he bonuses of upper-level managers, who oversaw multiple New York retail locations, were also tied to whether the stores they oversaw stayed within their allotted hours targets," Gathmann-Landini Decl. ¶ 20 and "[f]ailure to comply resulted in negative consequences," such as when Defendant "denied bonuses to Plaintiff and other employees at the Roosevelt Field's location . . . ." Am. Compl. ¶ 37.

2015 at the Roosevelt Field retail store location, and that during this time she was subject to the same wage and overtime policy as Gathmann-Landini. See e.g., Hammer Decl. at 2. Like Gathmann-Landini, Hammer states that much of the work she performed occurred off-the-clock to avoid negative consequences. Id.

V.      Defendants' Opposition

Defendants oppose Plaintiff's motion, arguing that i) there is no common unlawful policy regarding administrative work, ii) there is no common unlawful policy regarding community work, and iii) Plaintiff and members of the FLSA collective are not "similarly situated." See e.g., Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Certification Pursuant to 29 U.S.C. §216(b) of the Fair Labor Standards Act ("Def. Mem.") DE [57] at 1-2. In support of its position, Lululemon relies on numerous declarations of its employees. Each of these declarants were, and continue to be, employed by Defendant at its various New York retail store locations as Key Leaders, Assistant Managers and store managers. After declaring that they were in no way influenced by Defense counsel, these declarations all state similar testimony. For example, the Lululemon declarations commonly state that the declarants have never had issue with their pay, as they have been paid for all hours worked, that Lululemon prohibits employees from working off the clock, that all time spent by declarants doing "community events" has been compensated, that declarants have never heard of any co-worker claim that they were required to work off-the-clock, that they were not paid for time worked, or that they were not paid at an overtime rate for time worked over 40 hours per week. See eg., DE 58.

Having set forth the parties' positions and supporting documentation, the Court turns to the merits of the motion.

DISCUSSION

I.      <u>Conditional Collective Action Certification: Legal Principles</u>

The FLSA imposes liability upon employers that violate the statute's minimum wage and overtime compensation provisions.  <u>See</u> 29 U.S.C. §§ 206-207. Section 216(b) of that statute provides an employee with a private right of action to recover overtime compensation and/or minimum wages on behalf of himself, as well as other similarly situated employees. Such similarly situated employees may become parties to an FLSA action upon giving consent in writing to become parties, which consent is filed in the court in which the action is brought. 29 U.S.C. § 216(b); <u>Valerio v. RNC Industries, LLC,</u> 314 F.R.D. 61, 65 (E.D.N.Y. 2016).

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective. <u>Mongiove v. Nate's Corp.</u>, No. 15-1024 (NGG/RML), 2016 WL 590460 * 1 (E.D.N.Y. February 11, 2016). First, the court determines whether the proposed class members are similarly situated with respect to the alleged FLSA violations. <u>See</u> <u>Myers v. Hertz</u>, 624 F.3d 537, 554-55 (2d Cir. 2010); <u>Cheng Xia Wang v. Shun Lee Palace Restaurant, Inc.,</u> 2018 WL 3155835, at *3 (S.D.N.Y. June 28, 2018); <u>Jianmin Jin v. Shanghai Original, Inc.,</u> 2018 WL 1597389, at *5 (E.D.N.Y. April 2, 2018); <u>Rubery v. Buth-Na-Bodhaige, Inc.</u>, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2007). If the court decides the similarity question in the affirmative, appropriate notice is sent and members of the collective may thereafter "opt-in" by consenting in writing to be bound by the result of the suit. <u>Sultonmurodov</u>, 2015 WL 9273948, at *2; <u>Rubery</u>, 569 F. Supp. 2d at 336; <u>see</u> 29 U.S.C. § 216(b). The second step, which typically occurs after the completion of discovery, requires the court to make renewed factual findings as to whether the class members are actually similarly situated. <u>Rosario v. Valentine Ave. Discount Store, Co.,</u> 828 F. Supp. 2d 508, 514 (E.D.N.Y.

9

2011); <u>Bifulco v. Mortgage Zone, Inc.</u>, 262 F.R.D. 209, 212 (E.D.N.Y. 2009). "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." <u>Id.</u> (quotations and citations omitted). In the event that they are not, the "the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims." <u>Bifulco</u>, 262 F.R.D. at 212 (quoting <u>Rubery</u>, 569 F. Supp. 2d at 336); <u>see also</u> <u>Jianmin Jin,</u> 2018 WL 1597389, at *5.

    The instant motion concerns only the first step, <u>i.e.,</u> whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted. At this stage, "the evidentiary standard is lenient" <u>Castillo v. Perfume Worldwide Inc.,</u> 2018 WL 1581975, at *3 (quoting <u>Bifulco,</u> 262 F.R.D. at 212) and "plaintiffs need only make 'a modest factual showing sufficient to demonstrate that they and potential opt-in plaintiffs 'together were victims of a common policy or plant that violated the law.'" <u>Myers,</u> 624 F.3d at 555 (quoting <u>Hoffman v. Sbarro, Inc.,</u> 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); <u>Trinidad v. Pret A Manger (USA) Ltd.,</u> 962 F. Supp. 2d 545, 552 (S.D.N.Y. 2013).

    Importantly, the issue of "similarly situated" refers not to similarity of job duties, but to similarity in pay structure. Thus, courts in this district and elsewhere routinely reject attempts to limit certification based on alleged dissimilarity of job function. <u>See</u> <u>e.g.,</u> <u>Ritz v. Mike Rory Corp.,</u> 2013 WL 1799974, at *2 (E.D.N.Y. 2013) (rejecting limiting conditional class to bartenders and instead, including all tipped service workers in conditional class); <u>Calderon v. King Umberto, Inc.,</u> 892 F. Supp. 2d 456, 464 (E.D.N.Y. 2012) (refusing to limit certification to positions held by named plaintiffs); <u>Iglesias-Mendoza v. La Belle Farm, Inc</u>., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (rejecting as frivolous defendant's argument that certification

should be limited to duck feeders); <u>Summa v. Hofstra Univ.</u>, 715 F. Supp. 2d 378, 391 (E.D.N.Y. 2010) (certifying employees despite varying positions and functions). Additionally, it is well-recognized that the burden at the conditional certification stage is so low that Plaintiff's lone affidavit setting forth a common payment scheme may suffice. <u>See Sultonmurodov v. Mesivta of Long Beach</u>, 2015 WL 9273948, at *2 (E.D.N.Y. December 17, 2015).

II.     <u>The Motion for Conditional Certification is Granted</u>

Defendant opposes the motion on the ground that Plaintiff's submission fails to sustain even the limited burden of proof necessary for notice of a collective to be sent. First, Defendant contends that there is no common unlawful policy regarding community work that is "applicable to all New York State employees." Def. Mem. DE [57] at 17. Defendant further argues that Plaintiff is not similarly situated to other FLSA collective members regarding her allegations as to such work. Def. Mem. DE [57] at 19. Defendant makes similar attacks with respect to Plaintiff's administrative work allegations, <u>i.e.</u>, it is argued that "there is no common unlawful policy applicable to all New York [Assistant Store Managers] and [Key Leaders] requiring them to perform 'administrative work' off-the-clock," Def. Mem. DE [57] at 14, and that "Plaintiff has not shown she and the FLSA Collective are similarly situated with respect to 'administrative work.'" Def. Mem. DE [57] at 16. The Court disagrees.

A.     <u>Community Work Collective</u>

Defendant's argument that Plaintiff has not identified any common unlawful policy applicable to all New York State employees regarding compensation for community work is, as set forth below unavailing. Lululemon's first argument is based upon a policy set forth in its

11

Employee Handbook that reads, "Attendance at classes, courses and community events that are not mandatory is **<u>NOT</u>** considered hours worked and will <u>not</u> be paid time." Lululemon argues that because this stated policy is entirely lawful, any argument that its actual implementation is unlawful, "which would require a store-by-store and person-by-person analysis, and thus is not appropriate for broad, statewide conditional certification – particularly as Plaintiff proffers no evidence with respect to any other New York store." <u>See</u> Def. Mem. DE [57] at 17-18. <u>See also</u> DE [55-2] ("Employee Handbook") at 17.

Despite any language in the Lululemon handbook, Plaintiff has set forth sufficient facts to support the modest factual showing that employees at the Roosevelt Field location were subject to a policy of not being compensated for time spent doing what she characterizes as required community work. <u>See</u> Gathmann-Landini Decl. ¶¶7-12, and Hammer Decl. ¶ 7. Moreover, corporate documents attached to Plaintiff's papers as well as allegations as to common control are sufficient, at this stage of the proceedings to support Plaintiff's allegations as to a common policy affecting all members of the proposed New York State collective.

Lululemon's opposition is premised on the argument that Plaintiff has failed to demonstrate that a common policy or plan requiring unpaid community work (in contravention of Lululemon's stated policy) extends to *all* New York State retail store locations. However, "[c]ourts in this Circuit regularly find named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs have demonstrated that they all were subject to the same allegedly unlawful policy or plan." <u>Rosario v. Valentine Avenue Discount Store, Co., Inc.,</u> 828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011). <u>See</u> <u>Karic v. Major Auto. Co., Inc.,</u> 799 F. Supp. 2d 219, 227 (E.D.N.Y. 2011) (finding that plaintiffs' allegations of a common pay practice among the locations where they worked, "coupled with plaintiffs' claim

that there is common ownership and control of all of these entities, including the three dealerships for which no plaintiff has yet appeared, is sufficient" to conditionally certify a class consisting of all of the entities) and Capsolas v. Pasta Res., Inc., No. 10 Civ. 5595 (RJH), 2011 WL 1770827, at *3 (S.D.N.Y. 2011) (finding that employees at all eight restaurants were similarly situated to plaintiffs who only worked at five of the restaurants where the "facts support[ed] a reasonable inference that there was a uniform policy across the eight restaurants, all of which share common ownership, are supervised by the same individuals, and are administered by the same company").

Here, Plaintiff alleges, and Lululemon admits that it owns and operates all of the retail stores in New York State. Further, the Court holds that Plaintiff's affidavits, including her declarations and that of Julia Hammer, set forth the requisite "modest factual showing" demonstrating a common policy or plan of denying compensation for hours spent doing required community work extending to all of the stores in the proposed collective. Defendant takes issue with Plaintiff's factual declarations, submitting that they offer only conclusory and hearsay allegations of a common policy extending to all New York State store locations. While the Court agrees that conclusory allegations might be insufficient to extend conditional certification across the state, Plaintiff has supplemented these allegations with other documentary evidence to support a showing of a common policy requiring employees to perform unpaid community work. For example, Plaintiff has submitted an "80.20 checklist" which every New York State store is required to complete, that has a section titled "community," ("80.20 Checklist"). DE [55-7]. Plaintiff has also submitted documentary evidence of retail role descriptions ("Retail Role Descriptions"), applicable to all stores state-wide, stating that store managers "are accountable for ensuring that all areas of the 80.20 are fulfilled," DE [55-1] and assistant managers "[are]

13

responsible for certain aspects of the '20-80 Management System', as delegated by the Store

Manager," ("Assistant Manager Duties").  DE [55-3]. Further, Plaintiff has submitted a weekly

business report ("Business Report"), which all stores in the state were required to send to

corporate management, which includes a section titled "Ambassador/Community/Run Update.,"

that chronicles a retail store's community work efforts. <u>See</u> DE 55-6 at 2.

   Additionally, Plaintiff has submitted evidence in the form of e-mails from corporate

management supporting her allegation of the importance of performing community work. The

first e-mail ("Sach's Email"), sent by tri-state regional director Jennie Sachs, to 24 Assistant

Managers working at different New York state locations, recognizes the community work efforts

at the Roosevelt Field store. <u>See</u> DE [55-8]. Another e-mail, which recaps a telephone

conference between over a dozen Assistant Managers at different New York retail locations,

("Telephone Conference Recap") states that the managers "should all be more proactive about

inviting yoga teachers," as part of their Ambassador program. DE [55-8]. In Plaintiff's Reply

Declaration, she states that she received training at Lululemon's Manhattan store on Madison

Avenue from an Assistant Manager named Carrie, that Carrie explained to Plaintiff that part of

the Assistant Manager's job was making sure employees were "sweating in the community," and

"that this was often a difficult task because many employees did not want to spend their time on

unpaid work." Gathmann-Landini Reply Decl. ¶ 5.

   Finally, Plaintiff describes a meeting she and other Assistant Managers from Lululemon

retail locations had with tristate regional manager Jennifer Sachs and Lululemon HR

representative Michelle Falcone, who is the HR representative for all New York retail store

locations.[4] Plaintiff alleges that during this meeting, she and the other Assistant Managers present discussed how there was a problem of performing administrative and community work off-the-clock. Id. ¶ 2.

All of Plaintiff's allegations and documents meet the modest showing necessary to support her claim that (despite language in the company handbook) community work was very much required and that employees in the proposed collective, like Plaintiff and Hammer, performed such work without compensation. These submissions, the majority of which are applicable to all stores in New York State, suffice to meet the "very light" burden at the first step of conditional certification. Further, whether Defendant actually curtailed FLSA provisions through use of its Employee Handbook policy to not compensate employees for performing community work at all the New York State stores is a question of fact inappropriate to resolve at this stage. In sum as to community work, the Court holds that Plaintiff's allegations, in conjunction with other evidence, supports the modest factual showing of a nexus between her and the purported collective. The Court will therefore allow conditional certification of a community work collective of all New York State stores. The unpaid work included in such community work is that work as described in Plaintiff's and Hammer's declarations such as attending fitness classes and recruiting ambassadors.

Defendant's declarations do not require a different result. Deposition testimony corroborating those declarations will be more availing at the next stage of this litigation which will take place at the close of factual discovery. At that time, if requested, the Court will make

---

4.  Plaintiff names some of the Assistant Managers present at this meeting: Sarah Grant, Marla Sadler, Casey Sylvestro, and Ellie Tonev. The retail store locations present include Greenwich, Westchester, Westport, West Hartford, East Hampton, and Roosevelt Fields, amongst others.

renewed factual findings to determine whether the Plaintiffs are actually similarly situated to other employees. At this stage however, Defendants' declaration serve only to create a question of fact, they do not, as a matter of law, defeat the motion for conditional certification. Accordingly, the first collective shall consist of those employed by Defendant Lululemon USA Inc. as Educators, Key Leaders, and Assistant Managers at any of its New York State retail locations from August 27, 2013 to today, who were not paid straight or overtime compensation for "community work" in at least one work week during this time.

       B.     <u>Administrative Work Collective</u>

Similar to its argument regarding community work, Lululemon argues that there is no common unlawful policy regarding administrative work, and that Plaintiff is not similarly situated to the purported collective of Key Leaders and Assistant Managers. Defendant takes issue with Plaintiff's allegations of *de facto* policies which resulted in widespread FLSA violations. The *de facto* policies at issue are Defendant's Hours Targets, Bonus Program, and Overtime Policy, that led to Plaintiff and the purported collective allegedly performing administrative work off-the-clock. The cases cited by Defendant, however, most of which involve nation-wide collectives, commonly refused to grant plaintiffs' motions for conditional certification where the plaintiffs alleged that employers' facially lawful policies resulted in FLSA violations. Defendant relies on these cases in support of their position opposing Plaintiff's motion arguing that its Hours Targets, Bonus Program and Overtime Policy are facially lawful, and the fact that such policies may motivate employees to curtail FLSA provisions is insufficient.

Defendant's application of the cases cited to the facts here do not defeat certification in this case. First, Defendant's cases support the proposition that facially lawful policies, *absent*

evidence that such policies were causing employees to curtail FLSA provisions, are insufficient to conditionally certify a collective. See Brickey v. Dolgencorp., Inc., 272 F.R.D. 344, 348 (W.D.N.Y. 2011) ("plaintiffs offer no evidence that the Dolgencorp policies about which they complain compelled, caused or necessitated FLSA violations"). In Brickey, the court denied conditional certification where the employer had a labor budget policy limiting payroll hours and rejected the argument that this policy "motivat[ed] managers to falsely reduce reported work hours . . . and/or to assign employees tasks to be performed 'off the clock,' . . . ."). Id at 346. The plaintiffs there "d[id] not allege that it was impossible or even difficult for managers to comply without engaging in illegal activities," and that "the basis for plaintiffs' claims is presumably that [the employer] knew or should have known that if it created incentives for managers to stay within their 'budget' for work hours, some managers might . . . falsify the time records," so that "it is not so much [the employer's] hours allocation policy about which plaintiffs complain, but the potential and indirect results of that policy." Id at 347-348. The court there recognized that "[w]henever an employer creates a reward system which depends upon the attainment of a particular goal, the potential is created for dishonest persons to act unlawfully in attempting to exploit the policy for their own gain," but "[t]his does not . . . render the underlying policy illegal, in the absence of some evidence that the employer intended, compelled or condoned unlawful consequences that were a direct result of the policy." Id at 348. The court then distinguished plaintiffs' case relied upon, Clark v. Dollar General Corp., 2001 WL 878887, (Middle Dist. Tenn. 2001), where "a district court granted certification of a regionally-limited FLSA collective action against Dollar General Corporation, brought by assistant managers who claimed, inter alia, that Dollar General's policies forced them to work off the clock . . . because they . . . could

17

not 'carry out their responsibilities' otherwise." Id at *1. The Brickey Court found that "plaintiffs offer no evidence that the Dolgencorp policies about which they complain compelled, caused or necessitated FLSA violations." Brickey, 272 F.R.D. at 348. Defendant's other cited cases commonly hold the same, i.e., that facially lawful policies, without evidence of such policies causing FLSA violations, is insufficient for conditional certification.

Here, Plaintiff has provided evidence in support of the required modest factual showing that she and the suggested collective of Assistant Managers and Key Leaders at Defendant's retail stores in New York State were subject to a common policy or practice compelling FLSA violations. With regards to Hours Targets, each of Defendant's store is given an allotment of hours that can be worked by employees on the clock. "For example, if a store location has a weekly Hours Target of 100 hours, it must schedule workers so that the total hours paid by the store that week total no more than 100 hours," and "[t]he number of hours given to each store location, and thus how many hours each store could pay employees for work, was based on the store's sales volume." Pl. Mem. At 10. See DE [55-10] ("Lululemon's Employee Bonus Policy"). Plaintiff's declaration states that "[e]mployee schedules were created not based on the amount of work that needed to be done, but on meeting our allotted hours target that Lululemon . . . would give each store," and alleges "[t]he allotted hours were never enough to complete all the work that employees had to do. Gathman-Landini Decl. ¶ 15.

Plaintiff has also provided documentary evidence supporting her allegations that she and members of the purported collective could not or were compelled not to carry out their required tasks while working on the clock. For example, Lululemon requires Assistant

Managers and Key Leaders to be on the retail floor for at least 75% of their scheduled shifts. See Assistant Manager Duties. Lululemon also has a Bonus Policy, applicable to all "North American" retail locations, which awarded quarterly bonuses up to 25% of an Assistant Manager's salary. See DE [55-12] ("Lululemon Bonus Policy"). Defendant awarded these bonuses so long as the retail store did not exceed the Hours Target allotted to it. See Lululemon Bonus Policy. For example, Defendant denied bonuses to Plaintiff at the Roosevelt Field location in the second quarter of 2015 for exceeding their quarterly Hours Targets by less than 1%. Am. Compl. ¶ 37. See also DE [55-13] ("Quarterly Bonus Email). Plaintiff has also alleged that there was "immense pressure" from Lululemon's corporate management to prohibit overtime work. Gathman-Landini Decl. ¶ 18; Hammer Decl. ¶ 8. As a result, "key leaders and assistant managers, including myself, would routinely perform administrative work off the clock each week." Gathman-Landini Decl. ¶ 19. Plaintiff's declaration details an incident where Melissa Lemiux, a manager for Lululemon, received a "final warning before termination," and that she had to speak during a regional call Plaintiff was on, as well as other Assistant Managers from other Lululemon locations, about how she received a final warning before termination for not "managing hours like an entrepreneur." Gathman-Landini Reply Decl. ¶ 3. Further supporting Plaintiff's position is found in her Reply Declaration where she details the meeting she and other named Assistant Managers discussed in front of Falcone about "how it was impossible to complete all of our assigned tasks within the 40 hours we were supposed to work each week . . . and how, as a result, we routinely worked off-the-clock." Gathman-Landini Reply Decl. ¶ 2.

Plaintiff's allegations coupled with her affidavits are sufficient for this Court to find that she has met her "very light" burden for conditional certification as to administrative work.

Unlike the cases cited by Defendant, Plaintiff has alleged that it was impossible for her to complete her administrative work without working off-the-clock to comply with the Hours Targets allotted to her store. Plaintiff has also named other Assistant Managers and store locations that complained of not being able to "complete all of their assigned tasks within the 40 hours they were supposed to work each week, how they were told they should not work any overtime hours, and how, as a result, they routinely worked off-the-clock." Id.

The critical concern is whether Plaintiff has put forth sufficient evidence to find a factual nexus between herself and other New York State Lululemon locations. At this stage of an FLSA collective action, Plaintiff's allegations and affidavits are sufficient to support her position that Defendant's *de facto* policies caused FLSA violations at other store locations throughout New York State. It is reasonable to allow conditional certification state-wide because Plaintiff's affidavits demonstrate the possibility of FLSA violations occurring at Defendant's New York State retail store locations. Although Plaintiff has not submitted affidavits detailing every retail store location in the state of New York, she has demonstrated that all Assistant Managers and Key Leaders have similar job duties, are subjected to the same *de facto* policies, that not meeting the allotted Hours Targets could result in a loss of sizable bonuses, and that other named Assistant Managers at various retail store locations in New York complained of not being able to complete their required tasks in their 40-hour work weeks. It is therefore reasonable to extend certification to all New York State stores because all are subject to these *de facto* policies, and Plaintiff has submitted sufficient evidence at this stage to meet her burden that there were FLSA violations occurring at Defendant's other stores not named.

In addition to arguing that the certification is not appropriate for the reasons set forth above, Lulemon contends that Plaintiff's definition of "administrative work" "is so broad that it is incapable of being certified," and "this definition encompasses a wide array of work . . . such that there is no 'similarity' to any of it." Def. Mem. at 16. This argument fails for two reasons. First, the issue of "similarly situated" refers not to similarity of job duties, but to similarity in pay structure. Courts in this district and elsewhere routinely reject attempts to limit certification based on alleged dissimilarity of job function. Second, Plaintiff's affidavits detail the job duty summaries for all Key Leaders and Assistant Managers, and this Court agrees with Plaintiff that "[w]hether a [Key Leader] or [Assistant Manager] was unpaid one week for time spent drafting a business recap report and another was unpaid that week for creating the weekly schedule is completely immaterial," at this stage. Memorandum of Law in Further Support of Plaintiffs' Motion for Court Authorized Notice Pursuant to 29 U.S.C. §216(b) of the Fair Labor Standards Act (DE [56]) at 6. Defendant also contends that Plaintiff has not presented any evidence of any member of the purported collective once performing administrative work off-the-clock. Def. Mem. at 16. As discussed, however, Plaintiff named other Assistant Managers at a meeting with Michelle Falcone who complained of not being able to complete all their administrative tasks in their 40-hour work weeks. <u>See also</u> Gathman-Landini Reply Decl. ¶ 7 ("I also had conversations with assistant managers Sierra Varin and Kathrine Gencorelli about how they had to complete work out of the store, well beyond their allotted 40 hours, often without being paid overtime"). Although FLSA violations may not have occurred at every retail location in New York State, it is squarely within this Courts discretion to direct that notice be sent to all locations. As set forth above, at the second step of the FLSA collective process, renewed factual findings will be made to

21

determine whether the 'opt-in' plaintiffs at these locations are, in fact, similarly situated to the named Plaintiff. If they are not, then "the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims." Bifulco, 262 F.R.D. at 212 (quoting Rubery, 569 F. Supp. 2d at 336); see also Jianmin Jin, 2018 WL 1597389, at *5.

Accordingly, the second collective shall consist of 2 those employed by Defendant Lululemon USA Inc. as Key Leaders and Assistant Managers at any of its New York State retail locations from August 27, 2013 to today who were not paid straight or overtime compensation for "administrative work" in at least one work week during this time.

III.    Defendant's Other Arguments Are Rejected

In addition to the specific arguments above, Lululemon argues that conditional certification should be denied because the claims "necessarily involve individualized, fact-specific inquires for each collective member on both liability and damages. Def. Mem. at 21. As discussed in great detail above, Plaintiff's submission more than supports the modest factual showing that all the members of the proposed collectives had similar job duties, were subject to the same *de facto* policies and compensation scheme and were not paid overtime. Defendant argues that the hours worked, jobs performed, and pay received is unique to each putative class member, so that individual issues will predominate over any common issues. However, "[t]he relevant issue here . . . is not whether Plaintiffs and potential opt-in plaintiffs were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week." Zaniewski v. PRRC Inc., 848 F. Supp.2d 213 (D. Conn. March 20, 2012). Plaintiff is seeking only conditional certification and thus, "a fact-intensive inquiry is inappropriate at the notice stage

. . ." Finally, Defendant's argument that this Court should delay consideration of FLSA certification until after class and collective-discovery, Def. Mem. at 24, has already been raised and rejected by this Court as reflected on the record. See DE [47].

IV.    Form of Notice

The parties are referred to this Court's pre-approved stipulation and forms of notice to be used in FLSA conditionally certified collective actions. Such forms are presumptively approved. They reflect the holdings of this Court (and the majority views in this District) as to issues of notice that are continually subject to litigation. To the extent that counsel wish to raise individually, or agree upon, any changes to those forms they are directed to submit any such changes to this Court for review along with an explanation as to why the proposed change is necessary. Counsels' joint statement regarding their agreement or proposed changes as to the form of notice are to be filed in a joint status letter on August 30, 2018.

CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional certification as an FLSA collective action pursuant to Section 216(b) is granted. The collectives shall consist of: 1) those employed by Defendant Lululemon USA Inc. as Educators, Key Leaders, and Assistant Managers at any of its New York State retail locations from August 27, 2013 to today, who were not paid straight or overtime compensation for "community work" in at least one work week during this time, and 2) those employed by Defendant Lululemon USA Inc. as Key Leaders and Assistant Managers at any of its New York State retail locations from August 27, 2013 to today who were not paid straight or overtime compensation for "administrative work" in at least one work week during this time. Parties are directed to confer regarding the use of the attached

notice, and any changes to this form are to be submitted for court review along with an

explanation as to why the proposed change is necessary.


Dated: Central Islip, New York
      August 13, 2018

                                         /s/ Anne Y. Shields
                                         Anne Y. Shields
                                         United States Magistrate Judge